2006 ME 119

**Robert PINEO**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued: June 12, 2006.

Decided: Oct. 23, 2006.

William Maselli, Portland, for plaintiff.

Stephanie Anderson, District Attorney, Julia A. Sheridan, Asst. Dist. Attorney, Portland, for State.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

CLIFFORD, J.

[¶ 1] Robert Pineo appeals from a judgment entered in the Superior Court (Cumberland County, *Warren, J.*) denying his amended petition for post-conviction review based on his claim of ineffective assistance of counsel.[1] Pineo contends that the post-conviction court applied the wrong standards in determining whether he was provided effective assistance of counsel at his trial. Pineo also argues that he was denied effective assistance of counsel when his defense attorney made unreasonable strategic choices without his consent, including the attorney's concession to the jury during his opening statement and closing argument that Pineo was guilty of some of the charges he was facing.[2] We are unpersuaded by Pineo's contentions, and affirm the judgment.

## I. BACKGROUND

[¶ 2] Pineo was convicted of two counts of aggravated assault (Class B), 17–A

---

1. Pursuant to M.R.App. P. 19(a), (f), we granted a certificate of probable cause allowing Pineo to pursue this appeal.

2. We find Pineo's remaining contentions—that his attorney did not pursue available defenses to intoxication and causation, and commented on Pineo's failure to testify—to be unpersuasive.

M.R.S. § 208 (2005); one count of aggravated operating under the influence (Class C), 29–A M.R.S.A. § 2411(6) (Supp.2001);[3] and two counts of driving to endanger (Class E), 29–A M.R.S. § 2413 (2005), following a jury trial conducted by the Superior Court (*Cole, J.*) in 2001. The charges stemmed from a motor vehicle accident in which Pineo, who had a blood-alcohol level of 0.16%, caused serious injury to the driver, and permanent injury to the passenger, of another vehicle. The court sentenced Pineo to serve a total of fifteen years imprisonment.[4] Pineo appealed, and we affirmed his convictions and his sentence in *State v. Pineo*, 2002 ME 93, 798 A.2d 1093. This appeal arises out of Pineo's post-conviction review petition, which he filed in October of 2002 and amended in May of 2003.

[¶ 3] Pineo contends that he was denied effective assistance of counsel due to the trial strategy employed by his defense attorney, who was privately retained. Pineo's attorney conceded Pineo's guilt to the charges of aggravated OUI and driving to endanger, and focused instead on defending Pineo against the more serious Class B charges of aggravated assault. Pineo is critical of other strategic choices made by his attorney at trial, asserting, inter alia, that his attorney did not attempt to fully discredit the blood-alcohol evidence with expert testimony; that he failed to argue that Pineo did not cause the accident; that he failed to offer a psychological report at trial and at sentencing, a report that went to Pineo's state of mind at the time of the offenses; and that he made disparaging comments about Pineo to the jury during closing argument.

[¶ 4] The post-conviction court considered evidence that, during his opening statement, Pineo's attorney conceded Pineo's guilt on the aggravated OUI charge, but contended the evidence would show that Pineo did not commit aggravated assault. During his closing argument, Pineo's attorney told the jury that Pineo should be held responsible for the crimes that the State had proved beyond a reasonable doubt, that is, the aggravated OUI and driving to endanger charges.[5] The attorney then told the jury, "You may want to take [Pineo] out and lynch him, but you can't." In the remainder of his

---

**3.** Title 29–A M.R.S.A. § 2411(6) (Supp.2001) has since been repealed. *See* P.L. 2003, ch. 452, § Q–83 (effective July 1, 2004).

**4.** The court sentenced Pineo to ten years imprisonment on the two aggravated assault counts, to run concurrently; five years imprisonment on the aggravated OUI count to run consecutive to the ten-year aggravated assault sentence, and a six-year license suspension; and six months imprisonment on the driving to endanger counts to run concurrent with the other sentences, with a 180–day license suspension to run consecutive to the six-year license suspension.

**5.** Pineo never voiced any objections to the court about his attorney's representation of him at the trial or at the sentencing hearing, including the concession of his guilt to the aggravated OUI and driving to endanger charges, making this case distinguishable from *State v. Anaya*, 134 N.H. 346, 592 A.2d

1142 (1991), a case relied upon by Pineo. In *Anaya,* the New Hampshire Supreme Court held that the defendant's attorneys' decision to concede the defendant's guilt at trial constituted ineffective assistance of counsel in violation of the federal and state constitutions when: (1) the defendant rejected a plea offer against the advice of his two attorneys, and told his attorneys that he was innocent and wanted to take his case to trial; (2) one of the attorneys conceded the defendant's guilt anyway during his opening statement; (3) the defendant thereafter testified to his innocence at trial; and (4) the defendant had to be physically restrained after one of his attorneys again conceded the defendant's guilt during closing argument, despite the defendant's express wish that his attorneys argue for his innocence to the jury during closing argument. *Anaya,* 592 A.2d at 1143–47.

closing argument, Pineo's attorney, attempting to convince the jury that Pineo did not commit the crime of aggravated assault, extensively analyzed the evidence and contended that the State failed to prove recklessness. The attorney also argued that Pineo's high blood-alcohol level was due to contaminated testing conditions,[6] and urged the jury to hold the State to its high burden of proof, "as much as you may want to take Mr. Pineo out back and throttle him."[7]

[¶ 5] The evidence revealed that Pineo paid a substantial fee to his attorney's law firm, and that his trial attorney had many years of criminal trial experience. Pineo also paid $9000 for a blood-alcohol expert, and $4500 for a psychological evaluation. Pineo testified that his initial discussions with defense counsel led him to believe that, if he pleaded guilty, he might be admitted to the drug court program and be subject to some house arrest. The State's firm plea offer, however, was for ten years imprisonment, with all but eight years suspended. Defense counsel explained to Pineo on more than one occasion, both orally and in writing, that there was no viable defense to the aggravated OUI charge, and that Pineo should accept the plea offer. The attorney thought it unlikely that Pineo would be successful in excluding the results of the blood-alcohol

test from the evidence, and that Pineo should expect to be sentenced to at least five years imprisonment for the aggravated OUI conviction. The attorney also warned Pineo of the inherent risks of going to trial, including the possibility of receiving consecutive sentences of up to fifteen years imprisonment. Pineo, however, remained steadfast in refusing to accept the State's plea offer, and insisted on going to trial.

[¶ 6] Faced with the prospect of defending a case with overwhelming evidence of guilt, as well as seriously injured, sympathetic victims, defense counsel informed Pineo that, as a matter of trial strategy, he would not attack the blood-alcohol test, nor would he argue that Pineo was not intoxicated. Rather, the attorney chose to focus his attention on defending against the aggravated assault charges, arguing to the jury that the State failed to prove that Pineo acted with a reckless state of mind.[8] The attorney advised Pineo that if baseless arguments were made to the jury, including the contention that Pineo was not intoxicated, it would undermine Pineo's credibility with the jury on the aggravated assault defense. The attorney also informed Pineo that he would not call a defense expert as a witness to present an abnormal condition of the mind defense on

---

6. Pineo's attorney filed a pretrial motion in limine to exclude evidence of the blood-alcohol test results. That motion was denied.

7. Pineo's attorney testified at the post-conviction hearing that his comments to the jury about how they might want to "lynch" or "throttle" Pineo were made because he thought the victims' testimony was very emotional, and likely had a great impact on the jury. Because of his prior trial experience in cases with sympathetic victims, he was concerned that the jury might want to seek vigilante justice against Pineo and ignore the evidence.

8. Title 17-A M.R.S. § 35(3)(A), (C) (2005) provides, in pertinent part:

A. A person acts recklessly with respect to a result of his conduct when he consciously disregards a risk that his conduct will cause such a result.

. . . .

C. For purposes of this subsection, the disregard of the risk, when viewed in light of the nature and purpose of the person's conduct and the circumstances known to him, must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation.

the aggravated OUI charge because the psychological report prepared on Pineo by the expert contained damaging information unknown to the State that, if disclosed during trial, could undermine Pineo's defense and negatively impact him during sentencing.

[¶ 7] Pineo's attorney testified at the post-conviction hearing that Pineo relied on the attorney's judgment to create this strategy, and Pineo was "on board" and "adopted" it. The attorney explained that although Pineo never explicitly agreed to the strategy, he never expressed any objection to it, nor did Pineo make any suggestions or give any indication to the attorney that the strategy should not be pursued. Pineo's attorney also testified that when the motion in limine to exclude the blood-alcohol test from evidence was denied, he again discussed the strategy with Pineo on the morning of the trial, explaining to Pineo that there was no way to defeat the aggravated OUI charge, and that the focus of the defense would be on defending against the aggravated assault charges. According to the attorney, Pineo again voiced no objection.

[¶ 8] Pineo testified that although he left it up to his attorney to create a trial strategy, he did not recall having any conversations or receiving any correspondence from his attorney explaining the trial strategy. Pineo further testified that if he had been consulted, he would not have agreed to the attorney's strategy.

[¶ 9] The post-conviction court found that Pineo had been informed of the trial strategy by his attorney, orally and in writing; that Pineo was aware of and consented to the strategy; and that, given the facts of the case, the strategy was not manifestly unreasonable. Concluding that Pineo failed to prove that he was denied effective assistance of counsel, the court denied his petition for post-conviction review. This appeal by Pineo followed.

## II. DISCUSSION

### A. Constitutional Standards for Assessing Ineffective Assistance of Counsel Claims

[¶ 10] Both the United States Constitution and the Maine Constitution ensure that a criminal defendant is entitled to receive the effective assistance of counsel.[9] U.S. CONST. amend. VI; ME. CONST. art. I, § 6; see Whitmore v. State, 670 A.2d 394, 396 (Me.1996). "The primary purpose of the effective assistance of counsel requirement is to ensure a fair trial." McGowan v. State, 2006 ME 16, ¶ 9, 894 A.2d 493, 496 (citing Strickland v. Washington, 466 U.S. 668, 684–86, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). We employ a "reasonably competent assistance" standard for evaluating ineffective assistance of counsel claims, see Levesque v. State, 664 A.2d 849, 851 (Me.1995), which follows, and is nearly identical to, the objective reasonableness standard articulated in Strickland,[10] McGowan, 2006 ME 16, ¶ 12,

9. The United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. The Maine Constitution similarly provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall have a right to be heard by the accused and counsel to the accused, or either, at the election of the accused." ME. CONST. art. I, § 6.

10. In Strickland v. Washington, the United States Supreme Court held that there are two components to adjudicating a convicted defendant's ineffective assistance of counsel claims: (1) the defendant needs to prove that his attorney's "performance was deficient," i.e., "fell below an objective standard of reasonableness," which requires showing that the errors made were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment";

894 A.2d at 497. To prevail on a claim of ineffective assistance of counsel, a post-conviction petitioner has the burden of demonstrating two components to the post-conviction court: "First, whether there has been serious incompetency, inefficiency, or inattention of counsel amounting to performance below what might be expected from an ordinary fallible attorney; and second, whether any such ineffective representation likely deprived the defendant of an otherwise available substantial ground of defense." *Id.* ¶ 11, 894 A.2d at 496–97 (quotation marks and alteration omitted); *see also Levesque,* 664 A.2d at 851. Given the fact-laden inquiry in evaluating ineffective assistance of counsel claims, whether a petitioner has satisfied his burden of meeting this two-prong test is determined on a case-by-case basis. *McGowan,* 2006 ME 16, ¶ 12, 894 A.2d at 497.

## B. Standard of Review

[¶ 11] We have traditionally applied a deferential standard of review to the findings of a post-conviction court, and "will not overturn a post-conviction court's determination as to the effectiveness of trial counsel unless it is clearly erroneous

and there is no competent evidence in the record to support it." *Aldus v. State,* 2000 ME 47, ¶ 14, 748 A.2d 463, 468 (quotation marks omitted). We have been urged to adopt a bifurcated standard of review in appeals from cases, including post-conviction review, in which the factual findings of the post-conviction court would be reviewed for clear error, and the legal conclusions reviewed *de novo. See Ornelas v. United States,* 517 U.S. 690, 695–99, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *McGowan,* 2006 ME 16, ¶ 14, 894 A.2d at 497–98. It is unnecessary for us to address whether we should change the standard of review in this case, however, because Pineo's arguments are not persuasive under either a clear error or a bifurcated standard. *See McGowan,* 2006 ME 16, ¶ 14, 894 A.2d at 498.

## C. Deference Accorded to Defense Counsel's Trial Strategy

[¶ 12] Pineo also contends that we should follow the presumed prejudice standard set forth in *United States v. Cronic,* 466 U.S. 648, 661–62, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), and vacate his convictions.[11] The State contends that *Cronic* does not apply to this case, that Pineo's

and (2) he must demonstrate that counsel's "deficient performance" resulted in prejudice to his defense, which requires a showing that the "errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

11. The United States Supreme Court has held that there are certain situations in which ineffective assistance of counsel claims must be reviewed according to a presumed prejudice standard instead of *Strickland's* objective reasonableness standard. In *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the Court noted that a presumed prejudice standard applies in cases involving "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjusti-

fied." *Id.* at 658, 104 S.Ct. 2039. One such circumstance is when "counsel *entirely fails* to subject the prosecution's case to meaningful adversarial testing ... [such that] the adversary process itself [is] presumptively unreliable." *Id.* at 659, 104 S.Ct. 2039 (emphasis added). "Thus, only when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial." *Id.* at 662, 104 S.Ct. 2039. "Apart from circumstances of that magnitude, however, there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* at 659 n. 26, 104 S.Ct. 2039.

contentions must be evaluated pursuant to the reasonably competent assistance standard, and that the court's finding that Pineo consented to the trial strategy of conceding guilt on some charges is not clearly erroneous. We agree with the State.

■ [¶ 13] Unless the standard of *Cronic* is applied, "[d]eference to strategic or tactical decisions of the trial attorney is *substantially heightened.*" *Levesque,* 664 A.2d at 851 (emphasis added); *see also Strickland,* 466 U.S. at 688–89, 104 S.Ct. 2052 (providing that defense counsel's performance is judged from a "highly deferential" standard, i.e., an objective standard of reasonableness, which includes reasonableness according to professional norms and all the circumstances of the particular case). These strategic and tactical decisions by defense counsel must be manifestly unreasonable to result in a new trial based on ineffective assistance of counsel. *See Levesque,* 664 A.2d at 851. The United States Supreme Court, mindful of the many strategic choices that must be made by criminal defense attorneys in planning for trial, has stated:

No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions.

*Strickland,* 466 U.S. at 688–89, 104 S.Ct. 2052.

[¶ 14] Pineo argues that his attorney's concession strategy should not be afforded substantially heightened deference in this case, and that, pursuant to the standard applied in *Cronic,* we should presume the

attorney's performance was deficient. We disagree. Recently, in *Florida v. Nixon,* 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004), the United States Supreme Court reviewed a trial strategy of conceding guilt, unanimously holding that an attorney's failure to obtain express consent to the strategy did not automatically render the attorney's performance ineffective, and that concession strategies must be evaluated pursuant to *Strickland's* objective reasonableness standard rather than *Cronic's* presumed prejudice standard. *Id.* at 178–79, 125 S.Ct. 551. In *Nixon,* there was overwhelming evidence of guilt, and the defendant's very experienced defense counsel was unable to obtain a favorable plea bargain on his behalf. *Id.* at 180–81, 125 S.Ct. 551. Even though the defendant did not affirmatively accept or reject the trial concession strategy after his attorney attempted to explain it to him, the attorney, during opening statement and closing argument, conceded the defendant's guilt to murder, focusing his attention on the mitigation evidence presented during the penalty phase of the trial. *Id.* at 181–83, 125 S.Ct. 551. Nixon's attorney adopted this strategy to preserve credibility before the jury in the hope of saving the defendant's life by avoiding the death penalty. *Id.* at 180–82, 125 S.Ct. 551. The death penalty was imposed on Nixon. *Id.* at 184, 125 S.Ct. 551. The Florida Supreme Court vacated Nixon's conviction and ordered that he be granted a new trial. *Id.* at 184, 125 S.Ct. 551. The Supreme Court reversed that judgment, concluding that the Florida Supreme Court had erroneously applied the *Cronic* standard when it vacated Nixon's convictions. *Id.* at 189–91, 125 S.Ct. 551. The Supreme Court held that "[a] presumption of prejudice is not in order based solely on a defendant's failure to provide *express* consent to a tenable strategy counsel has adequately disclosed to and discussed with the

defendant." *Id.* at 179, 125 S.Ct. 551 (emphasis added). The Supreme Court noted that "*Cronic* recognized a narrow exception" to the *Strickland* standard, "reserved for situations in which counsel has *entirely failed to function* as the client's advocate." *Id.* at 189–90, 125 S.Ct. 551 (emphasis added) (discussing why *Cronic* "infrequently" applies to ineffective assistance of counsel claims).

[¶ 15] *Nixon* makes clear that *Cronic* can be applied only when defense counsel utterly fails in defending a client. In this case, Pineo's attorney filed motions in limine, even though unsuccessful, to exclude the blood-alcohol test and the testimony of witnesses who had seen Pineo's truck swerve down the road minutes before the collision. The attorney called and cross-examined witnesses, and made various objections during the trial. He attempted to focus the jury's attention on the weaknesses of the aggravated assault charges. The attorney also obtained a favorable jury instruction for Pineo, and, at sentencing, filed a motion to vacate the aggravated assault and driving to endanger convictions. It cannot be said that the attorney utterly failed as Pineo's advocate.

■ [¶ 16] Reviewed pursuant to the substantially heightened deference standard accorded to a criminal defense attorney's strategic choices, Pineo's attorney's concession of guilt strategy was not below the performance expected of an ordinary, fallible attorney, and that strategy was not manifestly unreasonable. *See McGowan,* 2006 ME 16, ¶ 11, 894 A.2d at 496–97; *Levesque,* 664 A.2d at 851; *see also Nixon,* 543 U.S. at 179, 125 S.Ct. 551; *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052. There was overwhelming evidence of Pineo's guilt. Arguing that Pineo was not intoxicated, especially after the loss of a motion in

limine to exclude the blood-alcohol test, or that Pineo was not the cause of the accident, despite overwhelming evidence to the contrary, could reasonably be perceived as being likely to undermine the defendant's credibility before the jury and with the court at sentencing. In addition, the attorney's comments to the jury that they should hold the State to its high burden of proof and focus on the evidence, despite their possible desire to "lynch" or "throttle" Pineo, were not manifestly unreasonable because they were geared toward lessening both the emotional impact of the testimony of the sympathetic victims and the visceral reaction that defense counsel perceived the jury felt toward Pineo. Moreover, the attorney's decisions not to call an expert witness to offer a psychological report about Pineo's mental state, and not to request a presentence investigation for the sentencing hearing,[12] are strategic choices entitled to substantially heightened deference.

[¶ 17] Pineo was faced with a mountain of incriminating evidence, and his attorney chose an ultimately unsuccessful trial strategy, a strategy Pineo later regretted. It was Pineo's burden to demonstrate to the court that he was denied effective assistance of counsel. There is competent record evidence to support the court's finding that Pineo impliedly consented to the concession strategy, and that the strategy and other defense tactics did not amount to ineffective assistance of counsel. *See Aldus,* 2000 ME 47, ¶ 14, 748 A.2d at 468.

The entry is:

Judgment affirmed.

---

12. Pineo's attorney feared that such an investigation would disclose damaging information about Pineo's prior criminal history.