2011 ME 75

**Gary R. GAUTHIER Jr.**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued: May 11, 2011.
Decided: July 5, 2011.

Justin W. Leary, Esq. (orally), Leary & DeTroy, Auburn, ME, for Gary R. Gauthier, Jr.

William J. Schneider, Attorney General, Donald W. Macomber, Asst. Atty. Gen. (orally), Augusta, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and JABAR, JJ.

JABAR, J.

[¶ 1]  In 2006, Gary R. Gauthier Jr. and his co-defendant, Thomas Dyer, were each convicted of one count of murder, 17–A M.R.S. § 201(1)(A), (B) (2010), following a joint jury trial.  After we affirmed their convictions, *see State v. Gauthier*, 2007 ME 156, 939 A.2d 77, Gauthier filed a petition for post-conviction review, claiming that he had been denied effective assistance of counsel at trial.  The Superior

Court (Androscoggin County, *Delahanty, J.*) denied Gauthier's petition. On appeal, Gauthier contends that the court erred in finding that he received effective assistance of counsel. We disagree and affirm the judgment.

## I. BACKGROUND

[¶ 2] In October 2005, the bodies of James Graffam and John Vining were discovered in Lewiston. The cause of death for both victims was blunt trauma to the head, and each had been dead for a few weeks to a month. In December 2005, the State Police recovered several items—a bleach bottle, beer cans, a baseball bat, and a bag of stained clothing—buried on property in Pownal. These items were stained with Vining's and Graffam's blood.

[¶ 3] During the ensuing police investigation, both Gauthier and Dyer were interviewed multiple times. Initially, each admitted knowing Graffam but denied any involvement in the murders. Dyer eventually confessed that he was present during the murders but claimed that he participated out of fear that Gauthier would kill him. Gauthier never made incriminating statements.

[¶ 4] Gauthier and Dyer were indicted in February 2006. Relying on *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968),[1] Gauthier's attorney moved to sever Gauthier's case from Dyer's, but the court denied the motion after the State agreed not to use Dyer's

statements. The case proceeded to trial, which occurred over a six-day period in October 2006.

[¶ 5] The State's case was based primarily on forensic evidence. The Chief Medical Examiner testified that both victims died as a result of multiple blunt trauma injuries to the head, consistent with being struck by a baseball bat.[2] The State's DNA analyst testified that DNA from Gauthier and Dyer was found on the buried clothing stained with the blood of both victims.[3] The State called a witness who placed Gauthier, Dyer, and the two victims drinking together on the night the State alleged the murders occurred. The jury also received evidence that Gauthier and Dyer had been to Graffam's apartment in September 2005, and that Gauthier "often would go for a ride [to Pownal] with . . . [Dyer] and his girlfriend."

[¶ 6] One particular item of clothing, a Boston Red Sox jersey, was extensively stained with Vining's blood, but was not directly connected by DNA to Dyer or Gauthier. Based on prior conversations with the State's blood spatter expert, Gauthier's attorney knew that the front and back of the jersey had "cast-off" bloodstains, which occur when blood is flung from a blood-bearing object, such as a baseball bat. During cross-examination by Gauthier's attorney, the State's blood spatter expert testified that the person wearing the jersey was not swinging the blood-bearing object, and that the blood struck

---

**1.** In *Bruton v. United States*, the Supreme Court held that the admission of a non-testifying defendant's confession implicating a co-defendant in a joint trial violates the co-defendant's right of confrontation pursuant to the Sixth Amendment to the United States Constitution. 391 U.S. 123, 135–37, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

**2.** The Medical Examiner testified that Vining had sustained at least three blows to the head,

while Graffam had been struck at least five times.

**3.** Specifically, Gauthier's DNA was found on (1) a beer bottle located in Graffam's apartment, (2) a beer can present at Graffam's grave, (3) socks stained with Vining's blood, (4) sneaker laces from a pair of sneakers stained with Vining's blood, (5) a pair of jeans stained with Vining's blood, and (6) a shirt stained with Graffam's blood.

the back of the jersey while the wearer's back was turned toward the object being swung.

[¶ 7] After the State rested, Dyer's counsel informed the court that Dyer also intended to rest. Gauthier's attorney, however, chose not to rest his case. Faced with the State's evidence, Gauthier's attorney believed that a conviction was inevitable unless he could convince the jury that Gauthier was wearing the Red Sox jersey, and therefore not wielding the bat. Accordingly, before recessing for the day, Gauthier's attorney waived his *Bruton* objection and advised the court that he intended, as part of Gauthier's case, to introduce Dyer's statements through the testimony of the police detective who conducted the investigation.[4] Gauthier agreed with this strategy.

[¶ 8] When trial resumed the next morning, Dyer had changed his mind and decided to testify.[5] During direct examination, Dyer testified that he and Gauthier had a close relationship; that he participated in the murders only because Gauthier threatened him with a knife; and that he feared Gauthier based on prior violent acts that Gauthier told him he had committed. During cross-examination, Dyer confirmed that Gauthier was wearing the Red Sox jersey, admitted to lying to the police, and acknowledged asking his then-girlfriend and two other friends to provide him with a false alibi. Gauthier's attorney later called Dyer's girlfriend and the other friends to testify, and all three confirmed

that Dyer had asked them to lie. Unexpectedly, Dyer's girlfriend also testified that Gauthier once told her that he had beaten someone to death with a baseball bat.[6]

[¶ 9] The jury found Gauthier and Dyer each guilty of one count of murder for the killing of both Graffam and Vining. We affirmed their convictions and Gauthier's sentence in *Gauthier*, 2007 ME 156, 939 A.2d 77.

[¶ 10] In September 2008, Gauthier filed a petition for post-conviction review in the Superior Court, claiming that he had been denied effective assistance of counsel at trial. *See* 15 M.R.S. §§ 2121–2132 (2010); M.R.Crim. P. 65–75A. A hearing on the petition was held in September 2009, after which the court entered a judgment denying Gauthier's petition. The court found that the trial strategy adopted by Gauthier's attorney, though ultimately unsuccessful, did not rise to the level of ineffective assistance of counsel.

[¶ 11] We granted Gauthier a certificate of probable cause to pursue this appeal pursuant to 15 M.R.S. § 2131(1) and M.R.App. P. 19.

## II. DISCUSSION

[¶ 12] "The Sixth Amendment to the United States Constitution and article I, section 6 of the Maine Constitution ensure that a criminal defendant is entitled to receive the effective assistance of an attorney."[7] *McGowan v. State*, 2006 ME 16,

---

4. In his numerous statements to the police, Dyer mentioned that Gauthier had been wearing the Red Sox jersey on the night the murders occurred.

5. Although Gauthier's attorney had hoped to introduce Dyer's statement to the jury preemptively, he anticipated the possibility that Dyer might take the stand first.

6. Having been surprised by this testimony, Gauthier's attorney chose not to ask Dyer's girlfriend whether Gauthier had been referring to Vining or Graffam, for fear of what her answer might be. Although Gauthier faults his attorney's treatment of this witness, he has not demonstrated why his attorney should have anticipated this testimony.

7. The federal and state constitutional protections are "virtually identical." *Alexandre v.*

¶ 9, 894 A.2d 493, 496. To determine whether a post-conviction petitioner received constitutionally ineffective assistance of counsel at trial, we conduct a two-prong inquiry. *See Alexandre v. State,* 2007 ME 106, ¶ 43, 927 A.2d 1155, 1167. First, we consider "whether there has been serious incompetency, inefficiency, or inattention of counsel amounting to performance . . . below what might be expected from an ordinary fallible attorney." *McGowan,* 2006 ME 16, ¶ 11, 894 A.2d at 496–97 (quotation marks omitted). Second, we determine "whether any such ineffective representation likely deprived the defendant of an otherwise available substantial ground of defense." *Id.* ¶ 11, 894 A.2d at 497; *see also Whitmore v. State,* 670 A.2d 394, 396 (Me.1996) (explaining that "[t]o establish that he has been deprived of a substantial ground of defense, [a petitioner] must demonstrate that trial counsel's performance likely affected the outcome of the trial").

[¶ 13] In evaluating claims of ineffective assistance of counsel, the post-conviction court's findings are subject to a deferential standard of review:

> Whether the performance of an attorney falls below the standard is a question of fact. We will not overturn a post-conviction court's determination as to the effectiveness of trial counsel unless it is clearly erroneous and there is no competent evidence in the record to support it. Likewise, the finding of whether the petitioner was prejudiced by [his] attor-

ney's error is a factual finding reviewed for clear error.

*Francis v. State,* 2007 ME 148, ¶ 5, 938 A.2d 10, 11–12 (quotation marks omitted).[8] Because the burden is on the petitioner to prove both prongs, *see McGowan,* 2006 ME 16, ¶ 12, 894 A.2d at 497, Gauthier can succeed in this appeal only if the evidence before the post-conviction court compels findings in his favor, *see Heon v. State,* 2007 ME 131, ¶ 8, 931 A.2d 1068, 1070.

[¶ 14] Gauthier's ineffective assistance of counsel argument focuses on a single alleged error. He argues that his attorney committed a prejudicial, tactical mistake in choosing not to rest his case following the close of the State's case-in-chief. Gauthier reasons that the State's evidence proved only that he was present at the scene of the murders; that no further evidence was necessary to establish that he was wearing the Red Sox jersey; and that the witnesses called after the State rested its case provided the crucial narrative that had been lacking—namely, Gauthier's violent past and the relationship between Dyer, Gauthier, and the victims. Gauthier accurately characterizes his argument as an attack on his attorney's trial strategy.

[¶ 15] A determination that defense counsel's choices amount to "trial strategy" does not automatically insulate them from review. Such choices, however, must be afforded substantial deference. *See Levesque v. State,* 664 A.2d 849, 851 (Me.1995) ("Deference to strategic or tacti-

---

*State,* 2007 ME 106, ¶ 43, 927 A.2d 1155, 1167 (quotation marks omitted).

8. We have previously been asked to adopt a bifurcated standard of review for evaluating claims of ineffective assistance of counsel, but we have thus far declined such invitations. *See, e.g., Francis v. State,* 2007 ME 148, ¶ 5 n. 2, 938 A.2d 10, 12; *Heon v. State,* 2007 ME 131, ¶ 8, 931 A.2d 1068, 1070; *Alexandre,*

2007 ME 106, ¶ 43, 927 A.2d at 1167; *Pineo v. State,* 2006 ME 119, ¶ 11, 908 A.2d 632, 637; *McGowan v. State,* 2006 ME 16, ¶ 16, 894 A.2d 493, 498. Because Gauthier's arguments are not persuasive under either a clear error or a bifurcated standard, this case presents no occasion for us to address whether we should change the applicable standard of review.

cal decisions of the trial attorney is substantially heightened...."). As the United States Supreme Court has explained:

It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (citations omitted) (quotation marks omitted). For these reasons, we have recognized that "strategic and tactical decisions by defense counsel must be manifestly unreasonable to result in a new trial based on ineffective assistance of counsel." *Pineo v. State*, 2006 ME 119, ¶ 13, 908 A.2d 632, 638; *see also Levesque*, 664 A.2d at 851–52; *Twist v. State*, 617 A.2d 548, 550 (Me. 1992); *Tribou v. State*, 552 A.2d 1262, 1264–65 (Me.1989); *Doucette v. State*, 463 A.2d 741, 747 (Me.1983); *Pierce v. State*, 463 A.2d 756, 759–60 (Me.1983); *True v. State*, 457 A.2d 793, 796 (Me.1983).

[¶ 16] At the conclusion of the State's case-in-chief, there was overwhelming evidence of Gauthier's guilt. The jury had been presented with forensic evidence linking Gauthier's and Dyer's DNA to the buried clothing stained with the blood of both victims, as well as expert testimony establishing that both victims died as a result of multiple blunt trauma injuries to the head. Although there was no detailed information regarding the relationship between Dyer and Gauthier, the State's evidence put them drinking together with the victims on the night of the murders and jointly involved in concealing inculpatory evidence. The jury also heard from the State's investigating detective that Gauthier, Dyer, and Dyer's girlfriend would often travel to Pownal, the town where the buried clothing was discovered.

[¶ 17] As Gauthier recognizes in this appeal, his only plausible theory of defense involved establishing that he was wearing the Red Sox jersey. According to Gauthier, the jury could have reasonably concluded that the cast-off stains on the back of the jersey meant that Gauthier's back was turned while Dyer killed the victims. Although this is the same theory of defense adopted by his trial attorney, Gauthier now asserts that Dyer's statement was not necessary to persuade the jury that he was wearing the jersey.

[¶ 18] At the outset, we note that Gauthier's theory of defense is not without its problems. To be sure, the State's expert testified that the cast-off stains on the back of the jersey resulted from blood splatter striking the jersey while the wearer was facing away from the person swinging the bat. However, proof that Gauthier was wearing the jersey would only establish that Gauthier was not responsible for every blow inflicted on the victims and that his back was turned to Dyer at some point during the attack. Notably, the jersey also had cast-off stains on the front, suggesting that the wearer was, at some point, facing toward the assault.

[¶ 19]   Moreover, without Dyer's statement, the evidence establishing that Gauthier was wearing the jersey was less than convincing.   During opening statements, Dyer's counsel asserted that Dyer was not wearing the jersey.   At the close of the State's case, however, the only evidence presented to the jury from which an inference could be drawn that Gauthier was wearing the jersey consisted of testimony by the investigating detective that Gauthier was a Red Sox fan and had a wardrobe full of sports apparel.[9]   Comparatively, the evidence also established that Dyer's DNA was on a Red Sox hat stained with Vining's blood.

[¶ 20]   From this review of the record, we can readily conclude that the evidence does not compel a finding that Gauthier was denied effective assistance of counsel. The post-conviction court's finding that Gauthier was not prejudiced by his attorney's performance is not clearly erroneous.[10]   Because Gauthier faults his attorney's decision not to simply rest his case, he must show a reasonable probability that the jury would not have found him guilty of murder based on the evidence presented during the State's case-in-chief.   *See Strickland*, 466 U.S. at 694, 104 S.Ct. 2052 (stating that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"); *see also McGowan*, 2006 ME 16, ¶ 13, 894 A.2d at 497 ("The reasonable probability requirement of the second prong means 'a probability sufficient to undermine confidence in the outcome.'"

(quoting *Aldus v. State*, 2000 ME 47, ¶ 20, 748 A.2d 463, 471)).   Given the weakness of his theory of defense and the state of the evidence at the close of the State's case, Gauthier has not made this showing.

[¶ 21]   Because Gauthier was not prejudiced by his attorney's performance, it is unnecessary to reach the first prong of the ineffective assistance of counsel analysis. *See Francis*, 2007 ME 148, ¶ 6, 938 A.2d at 12.   Nevertheless, we briefly note that the court properly found that Gauthier's attorney's performance did not fall below that of an ordinary, fallible attorney.   Gauthier's defense strategy depended upon the jury believing that he was wearing the Red Sox jersey.   Although Gauthier now maintains that this fact had been sufficiently established by the close of the State's case, his attorney reasonably believed otherwise and discussed with Gauthier the relevant issues concerning the decision to use Dyer's statement.   The events did not unfold exactly as Gauthier's attorney expected, and the chosen strategy ultimately proved unsuccessful.   On this record, however, Gauthier has not shown that the tactical decisions made by his trial counsel were "manifestly unreasonable."   *See Pineo*, 2006 ME 119, ¶ 13, 908 A.2d at 638.

[¶ 22]   For the reasons stated, the post-conviction court's findings are supported by competent record evidence, and the court did not commit clear error in concluding that Gauthier failed to meet his burden of demonstrating ineffective assistance of counsel.

---

9.   During questioning of the State's DNA analyst, Dyer's counsel suggested that DNA found on the jersey shared a unique characteristic with Gauthier's DNA profile.   Because the DNA sample taken from the jersey did not meet a threshold level of reliability, the DNA analyst disagreed with Dyer's counsel's suggestion.

10.   We often begin with the second prong regarding prejudice "because if it is determined that there was no prejudice, there is no need to address the first prong regarding whether counsel's performance was deficient." *McGowan*, 2006 ME 16, ¶ 13, 894 A.2d at 497; *accord Pottios v. State*, 1997 ME 234, ¶¶ 9–10, 704 A.2d 1221, 1223–24.