ALEXANDER, J.,
dissenting.
[¶ 34] I respectfully dissent.
[¶ 35] The post-conviction record in this appeal reveals a too common, shotgun style approach to post-conviction advocacy. That approach challenges many tactical choices by trial counsel — usually about things allegedly not done — with the hope that, years after the events at issue, Monday morning quarterbacking about one or a few of trial counsel’s many tactical choices will find a' sympathetic ear of a post-conviction court or an appellate court willing to second guess trial counsel and order a new trial or a new hearing.
[¶ 36] In its opinion the Court rejects the principal arguments asserted by post-conviction counsel. The Court then takes a collateral argument about not cross-examining the victim about inconsistent statements, revises post-conviction counsel’s cross-examination argument to become - an allegation that trial • counsel should have affirmatively presented -witnesses to testify about the inconsistent statements, purports to ■ clarify -the standard for post-conviction review of trial counsel’s performance, and vacates the post-conviction -court’s judginent. To vacate and announce its clarification of the law, the Court abandons a fundamental principle of limited appellate review of trial court decisions and holds that when the post-conviction court did not make findings on an issue, and none were requested by counsel, the Court, contrary to convention, will infer that the post-conviction court would have made erroneous statements of law had it articulated the findings that were not requested.
[¶ 37] The standard for post-conviction review of trial counsel’s tactical choices was well stated in Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): “Judicial scrutiny of counsel’s performance must be highly deferential.” Elaborating on that standard, the Strickland Court observed:
It is all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is • all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. ... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must' indulge *1176 a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the pre- : sumption that, under the circumstances, !the challenged action “might be considered sound trial strategy....” There are countless ways to provide effective assistance1 in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.
The availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges. Criminal trials resolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel’s unsuccessful defense. Counsel’s performance and even willingness to - serve could be adversely affected. Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases,. and undermine the trust between attorney and client.
466 U.S. at 689-690, 104 S.Ct. 2052 (internal citations omitted).
[¶38], The record here does not demonstrate that Theriault, even with the. clarity of hindsight, has overcome the “strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.” Id. at 689, 104 S.Ct. 2052.
I. CASE HISTORY
[¶393 The case history is extensively stated in the Court’s opinion. Only the key points related to the issues on post-conviction review are stated here.
[¶ 40] On March 14, 2008, Mark Ther-iault drove the six-year-old victim and her twenty-two-year-old sister to a nearby store. Theriault, who is not related to the victim, invited the victim and her sister to return to his house. The sister refused, but the victim was taken alone, by Ther-iault, to his house. There, the victim took a bath, played a video game, and then was sexually assaulted. At the 2011 trial, the victim testified that sexual assault occurred in Theriault’s bedroom after Ther-iault had removed her clothes.
[¶41] Later on March 14, the victim returned home with wet hair and said that she had taken a bath. When her sister asked about the wet hair, the victim became" quiet. Later, the victim’s sister asked if Theriault had seen the victim naked and if Theriault had touched her “down there,” referring to the victim’s genitals. Becoming emotional, the victim said that Theriault had seen her naked and touchéd her."
[¶ 42] The victim’s sister reported the disclosure to their mother, who then drove the victim and her sister to a nearby hospital. The victim and her sister continued to discuss the sexual assault during the ride. At the hospital, the victim was assessed for purposes of medical treatment by a registered nurse. During the evaluation, the victim told the nurse that after she had taken a bath, Theriault had called her into the living room and touched her over her clothing “down there,” which the victim identified by pointing toward her genitals. In closing argument at the 2011 trial, trial counsel focused on the inconsistencies in the versions of events the victim had testified to at trial, previously stated to her family, and previously stated to the nurse at the hospital.
[¶43] The nurse at the hospital had referred the victim for a forensic evaluation . at The Spurwink Child Abuse Program, which specializes in pediatric sexual abuse assessments and interviews. At *1177 Spurwink, a psychosocial evidentiary assessment was conducted by a licensed clinical social worker. The social worker’s report was presented at the post-conviction hearing. The report stated that during the interview of the victim conducted on March 25, 2008, “When asked if somebody had done something to her that she does not like, [the victim] stated, ‘No.’ ” The report also stated, ‘When asked if [Theriault] does something that she does not like, she stated, ‘Hmmm, no.’ ” According to the Spurwink report, the victim .also initially denied that anything had hap-’ pened “to her privates.” The victim then agreed that someone, had touched her “privates” and, in response to a series of questions, described at least one incident when Theriault sexually assaulted her. No evidence about the Spurwink interview was presented at trial.
[¶ 44] Theriault did not testify or present any evidence at trial. The jury found him guilty. After sentencing, trial counsel filed a notice of appeal and an application for leave to appeal the sentence. Ther-iault’s current post-conviction attorney then entered his appearance. Trial counsel was given leave to withdraw. Ther-iault’s application to allow an appeal from sentence was denied. After his current counsel failed to file a brief, Theriault’s direct appeal was dismissed for want of prosecution. The petition for post-conviction review was filed nearly a year after the direct appeal was dismissed.
II. POST-CONVICTION COURT PROCEEDINGS
[¶ 45] In his post-conviction filings, and in advocacy before the post-conviction court, Theriault asserted numerous claims of ineffective assistance by trial counsel. The record indicates that the principal focus of advocacy before the post-conviction court were claims that trial counsel had not (1) adequately consulted with Theriault and prepared him to testify at trial; (2) asserted and presented evidence identifying the victim’s brother and step-father as. alternative suspects; and (3) sufficiently investigated the case and identified facts or expert witnesses to support Theriault’s defense and attack .the victim’s credibility.
[¶ 46] The specific claims of ineffective assistance directed at trial counsel in the post-conviction proceeding included:
1. Insufficient pretrial communication and contacts with Theriault;
2. Failure to prepare Theriault to testify and to allow Theriault to make a rational decision to testify in his own defense;
3. Failure to hire a private investigator to investigate his case and perhaps develop evidence that the victim had a motive to lie and that the victim’s brother and stepfather should be considered alternative suspects;
4. Failure to call unnamed witnesses who allegedly would have testified to in-consistences in the -victim’s statements, without indication of who the witnesses were or what they might have testified to;
5. Failure to retain expert witnesses to (a) discuss the impact of suggestive interview techniques on children, and (b) explain the significance of the lack of physical findings of an assault;[15]
*1178 6. Failure to request an order to allow review of the victim’s alleged DHHS records, but without any indication, by post-conviction counsel, that DHHS records existed, or that, if they did exist, what relevant information they might contain;
7. Failure to challenge the by then nine-year-old victim’s competency to testify at trial, but without any indication of any basis that trial counsel or the trial court might have had to question the victim’s competence at trial;
8. Failure to call character witnesses to testify to Theriault’s good character traits, although such evidence would have opened the door for the State to ask questions about Theriault’s prior bad acts, including a Connecticut conviction for child endangerment and a possible sexual assault charge in New Mexico;
9. Failure to call a police officer who, had recorded some inconsistent statements from the victim and other family members, although such an inquiry could have opened the door to the officer’s testimony about a conversation with Theriault, in which Theriault admitted to unrelated criminal conduct in other states and got into a heated argument with the officer “flip[ping] him off’;
10. Failure to cross-examine the victim about her trial testimony that on the day of the incident, she played a PlayStation video game at Theriault’s home, after Theriault had informed trial counsel that he did not own a PlayStation; and
11. Failure to cross-examine the victim about the Spurwink interview during which she initially stated that Theriault had not sexually assaulted her and no one had touched her privates, but later stated that someone had touched her privates and that Theriault had sexually assaulted her.
[¶ 47] On this last point, Theriault’s brief to the post-conviction court, his memorandum to us in support of allowing this appeal, M.R.App. P. 19(c), and his brief to us on appeal, each, using nearly identical language, argued only that trial counsel should have cross-examined the victim about her statements made during the Spurwink' interview. Theriault’s only argument regarding the Spurwink interview, in his brief to us, is under a heading “Cross-examination of [the victim ].” There Theriault argues, after referencing the Spurwink interview, that “[t]rial 'counsel utterly failed in this most basic role of cross-examining a complainant.” None of Theriault’s advocacy suggested, as the Court now determines, that trial counsel may have erred by not affirmatively presenting a witness describing the victim’s inconsistent statements in the Spurwink interview.
[¶ 48] The trial transcript indicates that at trial, Theriault’s counsel questioned the State’s witnesses about inconsistencies between the victim’s trial testimony and her prior statements to family members and personnel at the local hospital. Trial counsel’s examination of the State’s witnesses also raised the issue of whether the witnesses’ questioning of the victim may have suggested or ’ prompted her statements that' Theriault had sexually assaulted her. In closing arguments, trial counsel argued that reasonable doubt about guilt was created by the inconsistencies in the victim’s trial testimony and her prior statements and by the possible influence the questions she was asked on the evening of the event may have had on her statements.
[¶ 49], Trial counsel’s reasons for not cross-examining the victim more extensively were demonstrated at the post-conviction hearing. There, trial counsel testified that, while the victim was testifying, he could see members of the jury making a connection with her and that some jurors were crying. Consequently, trial counsel testified, he decided it was most important *1179 to limit cross-examination of the victim to get her off the stand as quickly as possible.
[¶ 50] Trial counsel’s choice to limit cross-examination of the victim in light of his concerns about jury sympathy for the victim cannot be characterized as ineffective assistance — a deficiency indicating “serious incompetency, inefficiency, or inattention of counsel amounting to performance ... below what might be expected from an ordinary fallible attorney,” Aldus v. State, 2000 ME 47, ¶ 12, 748 A.2d 463.[16] As a nationally respected text on trial advocacy by a Maine author notes, sometimes the best cross-examination is no cross-examination at all.[17]
III. THE STRICKLAND TWO-PART TEST
[¶ 51] The Court’s opinion states: “To prevail in a post-conviction proceeding based on an alleged constitutional deprivation of counsel, the petitioner must demonstrate two points: first, ‘that counsel’s representation fell below an objective standard of reasonableness,’ and second, that ‘errors of counsel ... actually had an adverse effect on the defense.’ ” (¶ 14, citing and quoting Strickland).
[¶ 52] Previously, we have described the petitioner’s burden on ineffective assistance of counsel claims as a two-part test: “First, we consider ‘whether there has been serious incompetency, inefficiency, or inattention of counsel amounting to performance ... below what might be expected from an ordinary fallible attorney.’ Second, we determine ‘whether any such ineffective representation likely deprived the defendant of an otherwise available substantial ground of defense.’ ” Gauthier v. State, 2011 ME 75, ¶ 12, 23 A.3d 185 (citations omitted). See also Strickland, 466 U.S. at 686, 104 S.Ct. 2052 noting that the “prejudice” or “adverse effect” test involves an inquiry into whether “counsel’s conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.”
[¶ 53] Following this general observation, the Strickland opinion articulates its widely used two-part test:
A convicted defendant’s claim that counsel’s assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Id. at 687, 104 S.Ct. 2052.[18]
IV. REVIEW OF THE POST-CONVICTION DECISION
[¶ 54] A post-conviction petition must be denied if the petitioner fails to maintain *1180 Ms or her burden to demonstrate entitlement to relief on either element of the two-part test.- Here, the post-conviction court, without reaching the competence of counsel issue, decided that its “analysis of the prejudice prong is determinative of this petition.” The post-conviction court stated generally, “If a post-conviction petitioner proves ineffective assistance, he must also demonstrate that the outcome of- the proceedings would have been different but for counsel’s performance,” a statement with which the Court takes issue.. ,
[¶ 55] The post-conviction court then proceeded td address many of Theriault’s specific challenges, finding, in each instance, that Theriault had not demonstrated prejudice — the term- drawn from Strickland — resulting from trial counsel’s allegedly inadequate representation of him. ■ The record indicates that for many of Theriault’s challenges, Theriault had offered no evidence whatsoever, of how he was prejudiced by the alleged failures to hire a private investigator, investigate to find alternative suspect evidence, retain experts, - or call unnamed witnesses to demonstrate ■ additional inconsistencies in the victim’s testimony.
[¶ 56] On • Theriault’s challenges (1) through (9), listed above, the Court concludes, and I agree, that: “Theriault failed to demonstrate entitlement to post-conviction relief. regardless of how one might characterize the element of prejudice, because the complete absence of any evidence of prejudice would preclude any prospect of proving that the.guilty verdict was unreliable and not entitled to confidence.” Court’s Opinion ¶ 26.
[¶ 57] That leaves for decision only issues (10), the failure to inquire further about the victim’s statement that she had used a PlayStation video game- at Ther-iault’s home, and (11), the failure to cross-examine the victim about the' inconsisten- • cies in her statements during the Spur-wink interview. Revising Theriault’s argument; the Court recharacterizes issue (11) from a failure to cross-examine-to a failure to present evidence, presumably by calling a witness from Spurwink to testify about the victim’s inconsistent statements in the Spurwink interview. The Gourt then decides on these two points, points that were not the primary points argued to the post-conviction court, that the post-conviction court’s improper wording of its decision as to the PlayStation issue is enough to require that the judgment be vacated.
[¶ 58] On the PlayStation issue, the record has gaps identical to those the Court identifies in rejecting claims (1) through (9).' The record does not indicate how evidence that Theriault did not have a PlayStation video game in his home could have been presented- except (1) through further cross-examination of the victim — a tactical choice properly rejected based on the jury’s perceived - sympathetic, reaction to the victim, or (2) by calling Theriault to the stand, contrary to the tactical decision approved by the post-conviction court and affirmed in the Court’s opinion. The -record is silent as to whether Theriault may haye had other video games in his home and whether the nine-year-old victim, recalling playing a video game when she was six, used the terrn “PlayStation” as a generic reference to any video game, or whether she recognized and recalled the exact model of the game she was playing.
[¶ 59] The post-conviction court rejected the PlayStation challenge, noting that at trial evidence was presented that the victim told the nurse that Theriault had touched her over her clothing, which was inconsistent with the victim’s trial testimony that she was not wearing clothes at the time of the assault. The post-conviction court found that because the jury appeared to have accepted the victim’s testimony despite her contradictory statements *1181 about the incident itself, evidence on a collateral issue, that Theriault did not have a PlayStation or cither video game — if that evidence existed — was not “likely to have produced a different result.”
[¶60] The Court characterizes this statement as an erroneous “outcome determinative test” justifying vacating the judgment. Court’s Opinion ¶27. But' the Court approves the post-conviction court’s rejection of the nine other claims, using similar, allegedly flawed language, where, like the PlayStation claim, there was no evidentiary support for entitlement to relief, regardless of how one characterized the element • of prejudice. The record lacks any indication of how the PlayStation evidence; if it existed, might have been presented, or how the tactical choice not to cross-examine the victim about the presence of some video game “so undermined the proper functioning of .the adversarial process that the trial cannot be relied on as having produced a just result.” Strickland, 466 U.S. at 686, 104 S.Ct. 2052.
[¶ 61] The Court’s ruling on the absence of Spurwink statement cross-exami-' nation, as post-conviction counsel characterized it, or the absence of' Spurwink statement evidence, as the Court recharac-terizes counsel’s argument, is based on an even thinner reed.
[¶ 62] As the Court’s opinion correctly recognizes: “The [post-conviction] court did not discuss this [Spurwink] evidence in its order, and neither party requested that the court issue findings on the issue.” Court’s Opinion ¶28. Thus, there is no improper use of words in the post-conviction court’s finding on this issue, and the lack of a request for findings suggests the limited attention the post-conviction court and Theriault gave to this issue in the post-conviction proceedings.
[¶ 63] “In those circumstances”, the Court’s opinion states, “we ordinarily would infer that a court made factual findings sufficient to support its ultimate conclusion.” Court’s Opinion ¶28. That principle is well established in the jurisprudence of appellate review. See Pelletier v. Pelletier, 2012 ME 15, ¶ 20, 36 A.3d 903; Sutherland v. Morrill, 2008 ME 6, ¶¶ 4-5, 940 A.2d 192; Lyons v. Baptist Sch. of Christian Training; 2002 ME 137, ¶ 13, 804 A.2d 364; State v. Dodd, 503 A.2d 1302, 1307 (Me.1986) (stating that when there has been no request for findings of fact pursuant to M.R.. Civ. P. 52(a), or M.R. Crim. P. 23(c) (now M.R.U. Crim. P. 23(c)), we will infer that the trial court found all the facts necessary to support its judgment, if those inferred findings are supportable by the evidence in the record).
[¶ 64] In its opinion, the Court abandons this sound principle of appellate review, stating: “In the specific circumstances of this .case, however, the legitimacy of that inference is undermined, because it would attribute to the court the use of a legal principle that it misstated several times in its order.” Court’s Opinion ¶28. The Court’s “several times” reference must be to portions of the post-conviction order that it affirms or to the post-conviction court’s single comment deciding the PlayStation issue.
V. LEGAL ANALYSIS
[¶ 65] As the Strickland opinion states, the post-conviction review process is not an invitation to revisit and second-guess trial tactics that, in hindsight, have proved unsuccessful. 466 U.S. at 689, 104 S.Ct. 2052. Although not completely insulated from review, strategic and tactical decisions of trial attorneys deserve significant deference. Id. To demonstrate that an attorney’s trial tactics were sufficiently ineffective to justify vacating a conviction, such decisions must be proved to have been “manifestly unreasonable,” Pineo v. *1182 State, 2006 ME 119, ¶ 13, 908 A.2d 632, indicating “serious incompetency, inefficiency, or inattention of counsel amounting to performance ... below what might be expected from an ordinary fallible attorney.” Aldus, 2000 ME 47, ¶ 12, 748 A.2d 463.
[¶66] In appellate review of a post-conviction court’s findings, the facts underlying the trial and post-conviction hearing are viewed in the light most favorable to the post-conviction court’s judgment. Lamarre v. State, 2013 ME 110, ¶ 2, 82 A.3d 845; Heon v. State, 2007 ME 131, ¶ 5, 931 A.2d 1068. Further, “[w]e will not overturn a post-conviction court’s determination as to the effectiveness of trial counsel unless it is clearly erroneous and there is no competent evidence in the record to support it. Likewise, the finding of whether the petitioner was prejudiced by his attorney’s error is a factual finding reviewed for clear error.” Gauthier, 2011 ME 75, ¶ 13, 23 A.3d 185.
[¶ 67] Thus, unless unsupported in the record, and there is no suggestion of that, we must accept the facts as the post-conviction court found them, and construe them most favorably to the post-conviction court’s decision.
[¶68] The Court determines that the post-conviction court erred, and its judgment must be vacated because, for the PlayStation issue, the post-conviction court did not consider, or for the Spur-wink issue, the Court infers that it did not consider, whether there was a “reasonable probability” that “the guilty verdict and resulting conviction were unreliable and not worthy of confidence.” Court’s Opinion ¶25 (citing Strickland, 466 U.S. at 693, 104 S.Ct. 2052).
[¶ 69] Regardless of whether one utilizes the Court’s articulation of the Strickland standard quoted from page 693 in Strickland, or the standard actually stated in Strickland, at 687, 104 S.Ct. 2052 quoted above in this opinion at ¶54, the Court’s opinion disregards the insignificance of the issues the Court relies on to vacate the judgment.
[¶ 70] The victim’s “PlayStation” reference at trial, and Theriault’s allegation that there was no PlayStation in his home, was irrelevant to the victim’s credibility— or any other trial issue — because there was no evidence that (1) the victim’s reference at trial to what she played with when she was six was product-specific, not generic; or (2) a witness was available to testify at trial that, three years prior to trial, there was no PlayStation or other video game in Theriault’s home.
[¶ 71] Without such evidence, Theriault failed to establish any “reasonable probability” that trial counsel’s tactics regarding the PlayStation issue were enough to “undermine the confidence in the outcome” of the trial. Just as it determined the first nine challenges, the Court should determine, as a matter of law, that on this irrelevant or insignificant issue, Theriault has failed to demonstrate either incompetence of counsel or prejudice entitling him to post-conviction relief.
[¶ 72] That leaves only the issue of the inconsistent statements in the Spurwink interview. If this is a lack of cross-examination of the victim issue, as post-conviction counsel characterized it, then, as discussed above, no ineffectiveness of counsel is demonstrated in the tactical choice not to examine the victim extensively after observing the jury’s reaction to the victim. If no ineffectiveness is demonstrated, the prejudice issue, regardless of how the post-conviction court characterized it, is not reached.
[¶ 73] If the issue is as the Court characterizes it, whether Theriault was prejudiced by trial counsel’s “failure to present any evidence of the prior exculpatory statements made by the victim during the Spurwink evaluation, when she reportedly *1183 said that no one — including Theriault — had done anything to her that she did not like, and, more specifically, that Theriault had not sexually assaulted her,” Court’s Opinion ¶28, there are still no grounds to vacate, even if we assume, as the Court apparently does, that this “evidence” issue, though not argued by counsel, was timely asserted and preserved.
[¶ 74] On this issue, the Court should not create an exception to its well-accepted principle of appellate review that, absent a request for findings, it will infer that a trial court properly made factual findings sufficient to support its ultimate conclusion on an issue before it. Even if the Court is ready to infer error when it should not, there still can be no “reasonable probability” that the tactical choice not to call the Spurwink witness was enough to “undermine the confidence in the outcome” of the trial.
[¶ 75] The Spurwink evidence would have to have been presented through a live witness who had treated the victim, not a copy of a report, as was offered in the post-conviction hearing. The post-conviction court would have known there was good reason for the defense to avoid the Spurwink witness in this case. Contrary to the statement in the Court’s Opinion ¶28, the Spurwink witness’s testimony would not have been limited to “the prior exculpatory statements made by the victim during the Spurwink evaluation.” After presenting those “exculpatory” statements, the witness, in response to cross-examination by the State, would certainly have testified to the statements by the victim that she had been sexually assaulted by Theriault.
[¶ 76] In the artificial world of post-conviction Monday morning quarterbacking, it is certainly not out of bounds to allege that, as a tactic to attack the victim’s credibility, the Spurwink witness should have been called by the defense at trial. But in the real world of a criminal trial, defense counsel’s calling this Spur-wink witness may itself have demonstrated incompetence of counsel. To quote the Strickland standard itself, certainly the choice not to call this likely adverse witness was not an error “so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.” 466 U.S. at 687, 104 S.Ct. 2052. The record demonstrates neither incompetence of counsel, nor prejudice to undermine the confidence in the outcome of the trial in the tactical choice not to call the Spurwink witness. This issue, even if characterized as failure to present evidence, rather than failure to cross-examine the victim, does not justify vacating the judgment.
VI. CONCLUSION
[¶ 77] Throughout its opinion addressing Theriault’s many complaints about trial counsel’s tactical choices, the post-conviction court may not, in each instance, have perfectly phrased its findings and conclusions. But in its opinion, and in its result, the post-conviction court committed no error. And it certainly committed no error in addressing the two collateral issues of trial tactics that the Court seizes upon to vacate the judgment. Neither of these issues is sufficient to undermine confidence in the outcome of the trial. I would affirm the post-conviction court’s judgment in its entirety.

. The record does not disclose the basis for the claim that calling an expert witness to testify about the lack of physical findings of an assault might have benefited the defense in an unlawful sexual contact case. In such cases, testimony about the lack of physical findings indicating an assault usually is offered by and benefits the State. Theriault’s claim on this point may be an example of making every conceivable criticism about things that trial counsel allegedly failed to do in the hope that some claim might find traction.

.The post-conviction court referenced the same standard for determining ineffective assistance, citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and Lang v. Murch, 438 A.2d 914, 915 (Me.1981), one of our earlier post-conviction opinions that used nearly identical language.

. Peter L. Murray, Basic Trial Advocacy, 157-158 (1995).

. Strickland was a death penalty case that included claims of incompetence of counsel in both the trial and the sentencing phase of the case.