MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2015 ME 137
Docket:       Aro-14-158
Argued:       December 9, 2014
Decided:      October 29, 2015

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.
Majority:     SAUFLEY, C.J., and MEAD, GORMAN, JABAR, and HJELM, JJ.
Concurrence:  SAUFLEY, C.J.
Dissent:      ALEXANDER, J.

MARK J. THERIAULT

v.

STATE OF MAINE

HJELM, J.

[¶1]    After a jury trial held in February 2011, Mark J. Theriault was convicted of one count of unlawful sexual contact (Class A), 17-A M.R.S. § 255-A(1)(F-1) (2014).  Theriault challenged the judgment through a petition for post-conviction review, *see* 15 M.R.S. § 2122 (2014), alleging that he was denied effective assistance of counsel during the underlying criminal proceeding.  The Superior Court (Aroostook County, *Hunter, J.*) denied Theriault's petition after a hearing, and we issued a certificate of probable cause, allowing Theriault to appeal the adverse post-conviction judgment.  *See* 15 M.R.S. § 2131(1) (2014); M.R. App. P. 19.  Because the court's decision applied a test for prejudice that did not fully comport with the standard established in *Strickland v. Washington*,

466 U.S. 668 (1984), we vacate the post-conviction judgment and remand for reconsideration.

## I. BACKGROUND

[¶2] We view the record of both the post-conviction proceeding and the underlying criminal action in the light most favorable to the State as the prevailing party. *See Lamarre v. State*, 2013 ME 110, ¶ 2, 82 A.3d 845. Theriault was indicted in July 2008 for unlawful sexual contact committed in March 2008 against a child who, at the time of the offense, was six years old. Attorney Allan Hanson was appointed to represent Theriault, and the case proceeded to a one-day jury trial in February 2011 (Aroostook County, *Hunter, J.*). The State presented the testimony of three witnesses: the victim's sister, a registered nurse who spoke with the victim at a local hospital after the victim's mother brought her there on the day of the incident, and the victim herself.

[¶3] The victim's sister, who was twenty-two years old at the time of the trial, testified that in March 2008, she lived with the victim and their brother, mother, and stepfather, near Theriault's residence. On March 14, 2008, Theriault drove her and the victim to a nearby store, and Theriault invited them back to his house. The sister refused, but the victim went with him. Later in the day, the victim returned home with wet hair and said that she had taken a bath. When the sister asked about the wet hair, the victim became quiet. That evening, the sister

asked if Theriault had seen the victim naked and if Theriault had touched her "down there," referring to the victim's genitals. Becoming emotional, the victim said that he had seen her naked and touched her. The sister, who acknowledged that she is not trained to interview children, testified that as she spoke with the victim, she (the sister) first referred to the genital area as "down there," and first raised the issue of whether the victim and Theriault were naked.

[¶4] The victim's sister reported the disclosure to their mother, who then drove the victim and the sister to a nearby hospital. The victim and the sister continued to discuss the assault during the ride. At the hospital, the victim was examined by a registered nurse who was trained to assist physicians with primary assessments of sexual assault victims younger than thirteen years old. During the evaluation, the victim told the nurse that after she had taken a bath, Theriault called her into the living room and touched her over her clothing "down there," which the victim identified by pointing toward her genitals. The nurse examined the victim and found no physical injury resulting from the alleged assault, which, based on the reported nature of the assault, was not unexpected. The nurse ultimately referred the victim for a forensic evaluation at The Spurwink Child Abuse Program, which specializes in pediatric sexual abuse assessments and interviews. No evidence was presented about the Spurwink evaluation.

[¶5]  The victim then testified that in March 2008, when she was six years old, she went to Theriault's residence, and, while there, she took a bath.  After she got dressed, and while she was using a PlayStation video game, Theriault told her to go into his bedroom, where he removed her clothes, told her to lie down on the bed, and touched her genitals, penetrating her with his fingers.

[¶6]  Theriault did not present a case-in-chief.  The jury found him guilty, and at a sentencing hearing held two days later, the court imposed a prison term of sixteen years, with all but eight years suspended, and six years of probation. Attorney Hanson filed a notice of appeal and an application for leave to appeal the sentence.  *See* 15 M.R.S. § 2151 (2014); M.R. App. P. 20.  Theriault's current attorney entered his appearance soon after, and Attorney Hanson withdrew as counsel.  We denied Theriault's application to allow an appeal from sentence, and in August 2011 we dismissed his direct appeal for want of prosecution.

[¶7]  In August 2012, Theriault filed a petition for post-conviction review, which, as amended in May 2013, alleged that Attorney Hanson failed to provide effective representation during the pretrial and trial proceedings.[1]  A trial on the post-conviction petition was held in September 2013, at which Attorney Hanson and Theriault both testified.  During the hearing, the court admitted into evidence a

---

[1]  Theriault also attempted to pursue a claim of ineffective assistance of counsel through a motion for new trial.  *See* M.R. Crim. P. 33 (superseded by M.R.U. Crim. P. 33 (effective Jan. 1, 2015)).  The court correctly denied the motion, because such a claim must be addressed in a post-conviction proceeding.  *See State v. Ali*, 2011 ME 122, ¶ 20, 32 A.3d 1019.

report of the psychosocial evidentiary assessment conducted by a licensed clinical social worker at the Spurwink Child Abuse Program. The report states that during the forensic interview of the victim conducted on March 25, 2008, "When asked if somebody had done something to her that she does not like, [the victim] stated, 'No.'" Additionally, the report recites, "When asked if [Theriault] does something that she does not like, she stated, 'Hmmm, no.'" According to the report, the victim also initially denied that anything had happened "to her privates." She then agreed that someone had touched her "privates" and, in response to a series of questions, described at least one incident when Theriault sexually assaulted her.

[¶8] After the parties submitted post-trial arguments, on March 11, 2014, the court issued a written decision denying the petition, concluding that its "analysis of the prejudice prong is determinative of this petition." In its order, the court outlined the two-part test that controls claims of ineffective assistance of counsel, which focuses on the quality of trial counsel's performance and any resulting prejudice. Addressing the issue of prejudice, the court stated generally, "If a post-conviction petitioner proves ineffective assistance, he must also demonstrate that the outcome of the proceedings would have been different but for counsel's performance."

[¶9] The court then proceeded to address many of Theriault's specific challenges to the quality of Attorney Hanson's representation of him, finding in

each instance that Theriault had not demonstrated prejudice resulting from Attorney Hanson's allegedly inadequate representation of him. In a number of its findings, the court framed the issue of prejudice in terms of whether, if Attorney Hanson had performed as Theriault contended he should have, there would have been a different outcome in the criminal trial. The court found, for example, that

- Theriault failed to prove that services of a private investigator, which Attorney Hanson did not secure, "might have produced a different outcome at his trial" or would have made a "difference in the outcome of this case";

- Theriault did not prove that Attorney Hanson's failure to consult with an expert on child interview issues "would have produced a different outcome at trial";

- Theriault did not prove that evidence of Theriault's character, which Attorney Hanson did not present, "would have made a difference at his trial";

- Theriault failed to prove that if he had testified, "the outcome of his trial would have been different"; and

- Theriault did not prove that, with additional information presented at the sentencing hearing, "the court's sentence might have been different."[2]

[¶10] The court also considered Theriault's claim that Attorney Hanson did not present available evidence that Theriault did not have a PlayStation at his house, to impeach the victim's testimony that she was playing with a PlayStation at

---

[2] Although Theriault's post-conviction petition alleged deficiencies in Attorney Hanson's pretrial and trial representation, he presented evidence at the hearing that Attorney Hanson also did not provide effective representation during the sentencing phase of the case, and the court examined that claim. It therefore became part of the basis for Theriault's claim for relief.

his house shortly before he assaulted her. The court rejected this claim, noting that at trial Attorney Hanson presented evidence that the victim told the nurse that Theriault had touched her over her clothing, which was inconsistent with the victim's trial testimony that she was not wearing clothes at the time of the assault. The court found that because the jury appears to have accepted the victim's testimony despite her contradictory statements about the incident itself, evidence that Theriault did not have a PlayStation was not "likely to have produced a different result." In its order, the court did not address Theriault's argument that Attorney Hanson should have presented evidence of the victim's exculpatory statements made during the Spurwink evaluation to impeach her inculpatory trial testimony.

[¶11] Without reaching the question of whether Attorney Hanson's representation of Theriault was constitutionally deficient, the court denied the petition based on its conclusion that Theriault "has failed to persuade this court that he was actually prejudiced by any such deficiencies." Theriault successfully sought leave to appeal the judgment pursuant to 15 M.R.S. § 2131(1) (2014) and M.R. App. P. 19.

## II. DISCUSSION

[¶12] Because the court denied Theriault's petition for post-conviction review on the sole basis that he had not proved prejudice arising from any

constitutional inadequacies in legal representation, the limited issue presented here is whether the court erred in that determination. In appeals from judgments issued in post-conviction proceedings, we review questions of law de novo and apply a deferential standard of review to factual findings. *Roberts v. State*, 2014 ME 125, ¶ 21, 103 A.3d 1031.

[¶13]  As we have recently noted, *Strickland* is the "seminal case" that establishes the standards controlling the disposition of claims of ineffective assistance of counsel. *Manley v. State*, 2015 ME 117, ¶ 12, --- A.3d ---.[3] The federal constitutional guarantee of the right to counsel under the Sixth Amendment extends to the states through the Fourteenth Amendment, *Missouri v. Frye*, 566 U.S. ---, 132 S. Ct. 1399, 1404 (2012), and so the *Strickland* standards govern ineffectiveness claims in state court post-conviction proceedings.

[¶14]  To prevail in a post-conviction proceeding based on an alleged constitutional deprivation of counsel, the petitioner must demonstrate two points: first, "that counsel's representation fell below an objective standard of reasonableness," and second, that "errors of counsel . . . actually had an adverse effect on the defense." *Strickland*, 466 U.S. at 688, 693. These elements of an ineffective assistance case, when proved, constitute a "showing that counsel's

---

[3]  In *Manley*, we reaffirmed that *Strickland v. Washington*, 466 U.S. 668 (1984), dispositively establishes the criteria in ineffectiveness claims, including the nature of prejudice that the petitioner must establish, despite language in some of our opinions that is not fully consistent with that federal authority. *Manley v. State*, 2015 ME 117, ¶ 18, --- A.3d ---.

errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. It is the second of these two elements that is at issue here.[4]

[¶15] We consider in turn Theriault's alternative arguments that he was presumptively prejudiced by Attorney Hanson's ineffective representation, and that the court erred in finding that he had not proved actual prejudice.

A. Presumed Prejudice

[¶16] Theriault first argues that Attorney Hanson's representation was so deficient that he is relieved of any burden to prove actual prejudice. Theriault did not advance this argument in the trial court, and so we review it under the obvious error standard. *See State v. Dolloff*, 2012 ME 130, ¶ 31, 58 A.3d 1032. An error is obvious if it is plain, affects substantial rights, and "seriously affects the fairness and integrity or public reputation of judicial proceedings." *Id.* ¶ 35 (quotation marks omitted).

[¶17] In cases where counsel's ineffectiveness amounts to the "constructive denial of the assistance of counsel," prejudice is "legally presumed" and need not

---

[4] Both federal and state law make clear that if a trial court concludes that the petitioner has not proved prejudice resulting from any alleged ineffectiveness, the court is entitled to deny the petition on that basis without reaching the question of whether the petitioner has also proved that ineffectiveness. *See, e.g.*, *Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); *Francis v. State*, 2007 ME 148, ¶ 6, 938 A.2d 10. Here, the court therefore followed a well-established analytical path by addressing the prejudice prong first but, having determined that issue adversely to Theriault, not reaching his claim of ineffectiveness.

be affirmatively proved. *Strickland*, 466 U.S. at 692; *see also United States v. Cronic*, 466 U.S 648, 659 (1984). Such cases, however, are "rare," *Laferriere v. State*, 1997 ME 169, ¶ 11, 697 A.2d 1301, and occur when there is a "complete denial of counsel" or when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659; *see also Pineo v. State*, 2006 ME 119, ¶ 15, 908 A.2d 632 (holding that under federal jurisprudence, *Cronic* applies only when "defense counsel utterly fails in defending a client"). *See, e.g.*, *Cuyler v. Sullivan*, 446 U.S. 335, 345-50 (1980) (prejudice is presumed when counsel proceeded to represent the accused despite a conflict of interest); *Geders v. United States*, 425 U.S. 80, 86, 91 (1976) (prejudice is presumed when a court order prevented a defendant from consulting with trial counsel during an overnight recess between his direct- and cross-examination); *Herring v. New York*, 422 U.S. 853, 857-64 (1975) (prejudice is presumed when trial counsel was prohibited from making a closing argument). *See generally Laferriere*, 1997 ME 169, ¶ 11, 697 A.2d 1301.

[¶18] Here, the record does not plainly demonstrate that, if Attorney Hanson's representation of Theriault was ineffective, it fell so far below constitutional standards that it constitutes one of the "rare" situations where Theriault would not be required to prove actual prejudice. Consequently, Theriault has not shown that the court committed obvious error by failing to presume the

existence of such prejudice to his right to counsel and instead examining the post-conviction record for actual prejudice. Theriault is therefore left with the burden of affirmatively proving prejudice. Accordingly, we turn to Theriault's contention that the court erred when it concluded that Theriault had not proved actual prejudice.

B.    Actual Prejudice

[¶19]   When prejudice cannot be presumed in a post-conviction challenge based on ineffective representation, the actual prejudice that a petitioner must prove "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Although this standard makes reference to a "probability," which suggests a quantitative inquiry, *Strickland*'s test for demonstrating actual prejudice requires a showing of a "*reasonable* probability," which is defined as a showing that the alleged ineffectiveness is enough to "undermine confidence in the outcome" of the underlying proceeding. *Id.* (emphasis added). Put another way, a criminal defendant is prejudiced by constitutionally ineffective representation when the result of the proceeding is "unreliable." *Id.* at 687. Under *Strickland*, therefore, the trial court must engage in an analysis that is not quantitative—that is, to determine if prejudice is probable. Rather, the court's analysis must be

*qualitative* in nature—that is, to determine whether the petitioner has demonstrated that trial counsel's performance undermines confidence in the outcome of the case and renders that outcome unreliable.

[¶20]    In *Strickland*, the Court expressly held that the proper test of a "reasonable probability" is different from an "outcome-determinative" standard, which is the quantitative inquiry that would require proof "that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693.   In expressly rejecting the different standard of proof contained in the "outcome-determinative" test, *id.* at 697, the Court explained that "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome."    *Id.* at 694; *see also Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."); *Gonzalez-Soberal v. United States*, 244 F.3d 273, 277 (1st Cir. 2001) (holding that the trial court committed error by stating that the petitioner "must demonstrate that but for the unprofessional error, he would not have been found guilty," even when the court correctly articulated the *Strickland* prejudice standard elsewhere in its written order (quotation marks omitted)).  In those cases, the outcome-determinative test exceeds

the burden that a petitioner is required to meet under *Strickland*'s "reasonable probability" standard and could result in the denial of relief that would otherwise be available under *Strickland*.

[¶21] In examining the relationship between the "reasonable probability" and "outcome-determinative" standards, it is significant to note that under some circumstances, a petitioner can satisfy the "reasonable probability" test by proving by a preponderance of the evidence that counsel's deficient representation altered the outcome of the case—in other words, by satisfying the outcome-determinative test. *See Williams v. Taylor*, 529 U.S. 362, 396-97 (2000). In *Williams*, the Virginia Supreme Court had vacated the trial court's judgment granting post-conviction relief based on ineffective assistance of counsel. *Id*. at 370-71. The Virginia Supreme Court construed the trial court to have used the outcome-determinative test, which the appellate court found was error. *Id*. at 371, 397. The United States Supreme Court reversed the Virginia Supreme Court's decision and reinstated the trial court's judgment for the petitioner. *Id*. at 397-99. In its analysis, the Supreme Court held that the Virginia appeals court itself erred by concluding that a "mere difference in outcome is not sufficient to establish constitutionally ineffective assistance of counsel." *Id*. at 397 (quotation marks omitted). Thus, *Williams* held that in that case, where the petitioner had proved that ineffective representation actually determined the outcome of the underlying

case, the petitioner also satisfied the "reasonable probability" aspect of the *Strickland* standard of prejudice.[5] *See id*. at 397-99.

[¶22] Significantly for purposes of this case, however, the *Williams* Court did not hold that a petitioner's *failure* to satisfy the outcome-determinative test must lead to a *denial* of the petition. Where a court imposes the outcome-determinative test and determines that the petitioner has *not* proved prejudice under that standard, then in effect the court is concluding that the petitioner fell short of meeting a standard that is higher than the test that should have been applied pursuant to *Strickland*. In other words, a petitioner's satisfaction of the outcome-determinative test is often one way to meet the *Strickland* prejudice standard that is sufficient, but not necessary.

[¶23] Controlling federal jurisprudence therefore establishes that the "reasonable probability" standard defined in *Strickland* and the outcome-determinative test differ in substance and are not co-extensive. With

---

[5] In two other cases, however, the United States Supreme Court explained that the outcome-determinative test might improperly *allow* relief where it should not be granted. In one case, where counsel failed to make an objection based on a legal argument that was subsequently discredited, the Court noted that the defendant might have "lost" a meritless opportunity for a more favorable outcome, but the reliability of the criminal proceeding's outcome is not compromised. *Lockhart v. Fretwell,* 506 U.S. 364, 367-69, 371-72 (1993). In the second case, the Supreme Court held that an attorney's decision not to knowingly present false exculpatory evidence did not prejudice the defendant within the meaning of *Strickland*. *Nix v. Whiteside*, 475 U.S. 157, 175-76 (1986). Even if the defendant proved that he would have attained a better outcome with perjured testimony, that outcome would not have been reliable. *Id.* These cases demonstrate that in some circumstances, a petitioner cannot always satisfy the "prejudice" prong of the *Strickland* standard without addressing whether counsel's conduct undermined the reliability of the proceedings.

these insights into the nature of the "reasonable probability" test, we turn to the court's determination that Theriault failed to prove that he was prejudiced by any deficiencies in Attorney Hanson's representation of him.

[¶24]   Here, the court concluded that Theriault did not prove that any deficiencies in Attorney Hanson's representation led to "a different outcome" or a "different result," and that they did not make "a difference."  In its order, the court articulated this standard as an overarching principle it would apply to Theriault's challenges generally, and it then applied this standard to a number of Theriault's specific complaints about Attorney Hanson's work on the case.[6]  On this basis, the court denied Theriault's petition.

[¶25]   By formulating and applying the prejudice requirement in this way, the court used only a portion of the prejudice standard prescribed in *Strickland*: it limited its inquiry to the question of whether the outcome of the criminal trial would have been different absent any ineffectiveness in legal representation.  The court, however, did not go on to apply the remaining aspects of the unitary *Strickland* prejudice test, which also requires the court to determine if there is a "reasonable probability" that the ineffectiveness resulted in a different outcome— meaning, whether ineffective assistance of counsel rose to the level of

---

[6]   For several of Theriault's specific challenges, the court framed the prejudice standard more generally, concluding, for example, that certain deficiencies did not "cause[] him prejudice" and that Theriault had not "affirmatively demonstrate[ed] prejudice."  As noted in the text, however, the court rejected Theriault's other challenges based on the outcome-determinative test.

compromising the reliability of the conviction and undermining confidence in it. By employing only a portion of the *Strickland* principle, the court in effect employed the outcome-determinative test rejected in *Strickland* because it determined only whether the outcome was likely different than it would have been if the petitioner had been properly represented, without considering whether the guilty verdict and resulting conviction were unreliable and not worthy of confidence. 466 U.S. at 693 ("[A] defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case."). In this case, the effect of the outcome-determinative standard of prejudice was to impose on Theriault a greater burden than, as a constitutional matter, he was obligated to bear.

[¶26] For several of Theriault's challenges to Attorney Hanson's conduct, Theriault offered no evidence whatever of how he was prejudiced by those alleged failures. For example, Theriault did not present *any* evidence about what information a private investigator might have found to provide an exculpatory explanation for the victim's accusations. On those points, Theriault failed to demonstrate entitlement to post-conviction relief regardless of how one might characterize the element of prejudice, because the complete absence of any evidence of prejudice would preclude any prospect of proving that the guilty verdict was unreliable and not entitled to confidence.

[¶27]    On other aspects of Theriault's claims, however, the court's assessment of prejudice was necessarily more nuanced.  For example, to address Theriault's claim that Attorney Hanson failed to present evidence that Theriault did not have a PlayStation at his house, the court was required to evaluate the prospective impact of that evidence to impeach the victim's testimony that she was using that type of game at Theriault's house on the day of the assault.  This assessment of the evidence was necessary because, as the court observed, the jury in fact was presented with other impeachment evidence: during her report of the assault to the nurse, the victim recounted the assault itself in a way that was different than what she described during her trial testimony, and Theriault presented evidence to the jury that some aspects of the victim's accusations may have been influenced by the way her sister elicited information when the victim first disclosed the assault.  The court was therefore called to gauge the effect of additional impeachment evidence, even though it may have related to a collateral matter.    In  doing  so,  however,  the  court  erroneously  employed  the outcome-determinative test, and on that basis, rejected Theriault's argument that Attorney Hanson's failure to present the evidence about the PlayStation resulted in prejudice.

[¶28]  Additionally, Theriault argued in the trial court, as he does on appeal,[7] that he was prejudiced by Attorney Hanson's failure to present any evidence of the prior exculpatory statements made by the victim during the Spurwink evaluation, when she reportedly said that no one—including Theriault—had done anything to her that she did not like, and, more specifically, that Theriault had not sexually assaulted her.  The court did not discuss this evidence in its order, and neither party requested that the court issue findings on the issue.  In those circumstances, we ordinarily would infer that a court made factual findings sufficient to support its ultimate conclusion.[8]  *See State v. Dodd*, 503 A.2d 1302, 1307 (Me. 1986); Alexander, *Maine Appellate Practice* § 416(e) at 273 (4th ed. 2013).  In the specific circumstances of this case, however, the legitimacy of that inference is undermined, because it would attribute to the court the use of a legal principle that it misstated several times in its order.

---

[7]  Both in the trial court and on appeal, Theriault has contended that Attorney Hanson failed to cross-examine the victim about her inconsistent statements and that he did not call other witnesses who could have testified about those inconsistent statements.  The record plainly demonstrates that one such witness is the Spurwink evaluator.

[8]  One way we could make that inference in this case is to consider the form of the evidence of the Spurwink evaluation presented to the court at the post-conviction hearing, which was a report written by the LCSW who conducted the evaluation.  The evaluator herself did not testify at the post-conviction hearing, and Theriault did not establish the foundation that would be necessary for admission into evidence of the report itself, which is hearsay, *see* M.R. Evid. 801-803.  The report, however, was admitted into evidence at the post-conviction hearing without objection; neither party has suggested that the information in the report could not have been presented in admissible form at trial; and the State has not argued that Theriault's prejudice argument fails on this basis.  Under these circumstances, we conclude that the manner in which evidence of the Spurwink evaluation was presented to the court is not a reason to reject Theriault's argument that he was prejudiced by Attorney Hanson's failure to present it at the criminal trial.

[¶29] We therefore conclude that in analyzing Theriault's claim that he was actually prejudiced by Attorney Hanson's ineffective representation, the court did not fully implement the proper standard of prejudice established in *Strickland*.

## III. CONCLUSION

[¶30] We remand this matter for reconsideration of Theriault's claims of prejudice based on the *Strickland* rubric. We recognize the *Strickland* Court's observation that application of the "reasonable probability" test rather than the "outcome-determinative test" will "alter the merit of an ineffectiveness claim only in the rarest case." 466 U.S. at 697; *Manley*, 2015 ME 117, ¶ 13, --- A.3d ---. We cannot, however, substitute our judgment for that of the trial court by presuming to determine whether, under the proper standard, Attorney Hanson's alleged ineffectiveness resulted in prejudice as that test is prescribed in *Strickland*. Accordingly, we must remand for reconsideration of Theriault's claim of prejudice under that standard.[9]

---

[9]   The First Circuit has suggested that in evaluating claims of ineffectiveness arising from trial counsel's failure to present evidence to impeach witnesses who provide incriminating testimony, the court may consider factors such as the strength of the State's case, the effectiveness of the actual defense presentation, and the significance of the impeachment value of evidence that trial counsel failed to develop. *Gonzalez-Soberal v. United States*, 244 F.3d 273, 278 (1st Cir. 2001).

We further note that on remand, if the court concludes that Theriault has proved that under *Strickland*, he was prejudiced by alleged deficiencies in Attorney Hanson's representation of him, the court will also be required to consider whether Theriault has further proved that that representation in fact fell below constitutional standards.

The entry is:

> Judgment vacated. Remanded for further proceedings.

--------

SAUFLEY, C.J., concurring.

[¶31] I join fully in the analysis and outcome of the Court's opinion. I write separately because the standards applicable to claims of ineffective assistance of counsel have not, historically, been sufficiently clear, and it is worthwhile to emphasize the clarifications addressed by the Court today.[10]

[¶32] The original two-pronged analysis of ineffective assistance of counsel claims now presents two potential components within each of its original two prongs. To be clear, however, the trial judge may begin the analysis at any point that works with the facts of the individual case.

1. **Ineffectiveness**—The ineffectiveness prong requires the court to examine whether counsel's representation "fell below an objective standard of reasonableness."[11] This analysis now encompasses two aspects.

--------

[10] In the matter before us, the trial court did not have the benefit of the clarified analysis of the jurisprudence provided in the Court's opinion today.

[11] *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

(a) **Extreme Ineffectiveness.**[12] The court must examine the record and the evidence presented to determine whether the representation was so deficient that the defendant will be relieved of the burden of proving actual prejudice. This "extreme ineffectiveness" analysis may precede other components of the analysis. Although it is devoutly to be hoped that such substantial failure of counsel will rarely be found to exist, the court must engage in this review by the time it has completed its analysis.

(b) **Ineffectiveness that Causes Actual Prejudice.** Absent a finding of extreme ineffectiveness, the court must determine whether counsel's conduct constituted ineffectiveness that resulted in "actual" prejudice. Because this determination of ineffectiveness will be necessary only if the petitioner demonstrates actual prejudice, it is often the last part of the analysis. Thus a court is fully warranted in moving to the question of actual prejudice before addressing this subpart.

2. **Actual Prejudice**—As the Court has clarified today, actual prejudice can be demonstrated in two different ways.

(a) **Reasonable Probability Test.** To demonstrate actual prejudice, the petitioner must demonstrate a "reasonable probability" that the result would have been different but for counsel's unprofessional errors, meaning that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 694 (1984). Thus, the court must determine whether the ineffective assistance of counsel compromised the reliability of the conviction and undermined confidence in it.

To prevail, the "defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693. If the court finds that the reliability of the

---

[12] Because a finding of extreme ineffectiveness eliminates the requirement of proof of actual prejudice, it is sometimes considered a part of the prejudice prong.

conviction and the court's confidence in that conviction have been compromised, it must assure that it has completed its analysis of the ineffective assistance prong because, once again, prejudice that is unrelated to the claimed ineffective assistance of counsel does not fall within this analysis.[13]

(b) **Outcome Determinative Test.** The outcome determinative test is in essence a specific application of the reasonable probability test. In many instances, if the petitioner demonstrates by a preponderance of the evidence that counsel's alleged deficient representation altered the outcome of the case, the court need go no further with regard to the determination of prejudice because, by definition, the petitioner has proved that the result is unreliable.[14] Prejudice has been proved, as long as the court has found deficiency in representation.

To be clear, a petitioner may prevail in demonstrating actual prejudice by meeting the outcome determinative test, but the petitioner need not meet this test to prevail on the reasonable probability test.

[¶33] With the Court's careful clarification today on this last point and the trial court's reference solely to the outcome determinative test, it is appropriate for us to remand the matter to the trial court for application of the law as it relates to actual prejudice. Thus, I cannot join the dissent's approach because it usurps the authority of the trial court to make the determination in the first instance.

---

[13] Although there may be other remedies for the petitioner, claims of ineffective assistance of counsel are distinct and should not be blurred with others analytically.

[14] *But see* Court's Opinion ¶ 21 n.5.

ALEXANDER, J., dissenting.

[¶35]  I respectfully dissent.

[¶36]  The post-conviction record in this appeal reveals a too common, shotgun style approach to post-conviction advocacy.  That approach challenges many tactical choices by trial counsel—usually about things allegedly not done— with the hope that, years after the events at issue, Monday morning quarterbacking about one or a few of trial counsel's many tactical choices will find a sympathetic ear of a post-conviction court or an appellate court willing to second guess trial counsel and order a new trial or a new hearing.

[¶37]  In its opinion the Court rejects the principal arguments asserted by post-conviction counsel.  The Court then takes a collateral argument about not cross-examining the victim about inconsistent statements, revises post-conviction counsel's cross-examination argument to become an allegation that trial counsel should have affirmatively presented witnesses to testify about the inconsistent statements, purports to clarify the standard for post-conviction review of trial counsel's performance, and vacates the post-conviction court's judgment.  To vacate and announce its clarification of the law, the Court abandons a fundamental principle of limited appellate review of trial court decisions and holds that when

the post-conviction court did not make findings on an issue, and none were requested by counsel, the Court, contrary to convention, will infer that the post-conviction court would have made erroneous statements of law had it articulated the findings that were not requested.

[¶38]  The standard for post-conviction review of trial counsel's tactical choices was well stated in *Strickland v. Washington*, 466 U.S. 668, 689 (1984): "Judicial scrutiny of counsel's performance must be highly deferential." Elaborating on that standard, the *Strickland* Court observed:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy. . . ."  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way. . . .

> The availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges.  Criminal trials resolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel's unsuccessful defense.  Counsel's performance and even willingness to serve could

be adversely affected. Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.

466 U.S. at 689-690 (internal citations omitted).

[¶39] The record here does not demonstrate that Theriault, even with the clarity of hindsight, has overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. 689.

## I. CASE HISTORY

[¶40] The case history is extensively stated in the Court's opinion. Only the key points related to the issues on post-conviction review are stated here.

[¶41] On March 14, 2008, Mark Theriault drove the six-year-old victim and her twenty-two-year-old sister to a nearby store. Theriault, who is not related to the victim, invited the victim and her sister to return to his house. The sister refused, but the victim was taken alone, by Theriault, to his house. There, the victim took a bath, played a video game, and then was sexually assaulted. At the 2011 trial, the victim testified that sexual assault occurred in Theriault's bedroom after Theriault had removed her clothes.

[¶42] Later on March 14, the victim returned home with wet hair and said that she had taken a bath. When her sister asked about the wet hair, the victim became quiet. Later, the victim's sister asked if Theriault had seen the victim

naked and if Theriault had touched her "down there," referring to the victim's genitals. Becoming emotional, the victim said that Theriault had seen her naked and touched her.

[¶43] The victim's sister reported the disclosure to their mother, who then drove the victim and her sister to a nearby hospital. The victim and her sister continued to discuss the sexual assault during the ride. At the hospital, the victim was assessed for purposes of medical treatment by a registered nurse. During the evaluation, the victim told the nurse that after she had taken a bath, Theriault had called her into the living room and touched her over her clothing "down there," which the victim identified by pointing toward her genitals. In closing argument at the 2011 trial, trial counsel focused on the inconsistencies in the versions of events the victim had testified to at trial, previously stated to her family, and previously stated to the nurse at the hospital.

[¶44] The nurse at the hospital had referred the victim for a forensic evaluation at The Spurwink Child Abuse Program, which specializes in pediatric sexual abuse assessments and interviews. At Spurwink, a psychosocial evidentiary assessment was conducted by a licensed clinical social worker. The social worker's report was presented at the post-conviction hearing. The report stated that during the interview of the victim conducted on March 25, 2008, "When asked if somebody had done something to her that she does not like, [the victim] stated,

'No.'" The report also stated, "When asked if [Theriault] does something that she does not like, she stated, 'Hmmm, no.'" According to the Spurwink report, the victim also initially denied that anything had happened "to her privates." The victim then agreed that someone had touched her "privates" and, in response to a series of questions, described at least one incident when Theriault sexually assaulted her. No evidence about the Spurwink interview was presented at trial.

[¶45] Theriault did not testify or present any evidence at trial. The jury found him guilty. After sentencing, trial counsel filed a notice of appeal and an application for leave to appeal the sentence. Theriault's current post-conviction attorney then entered his appearance. Trial counsel was given leave to withdraw. Theriault's application to allow an appeal from sentence was denied. After his current counsel failed to file a brief, Theriault's direct appeal was dismissed for want of prosecution. The petition for post-conviction review was filed nearly a year after the direct appeal was dismissed.

## II. POST-CONVICTION COURT PROCEEDINGS

[¶46] In his post-conviction filings, and in advocacy before the post-conviction court, Theriault asserted numerous claims of ineffective assistance by trial counsel. The record indicates that the principal focus of advocacy before the post-conviction court were claims that trial counsel had not (1) adequately consulted with Theriault and prepared him to testify at trial; (2) asserted and

presented evidence identifying the victim's brother and step-father as alternative suspects; and (3) sufficiently investigated the case and identified facts or expert witnesses to support Theriault's defense and attack the victim's credibility.

[¶47]  The specific claims of ineffective assistance directed at trial counsel in the post-conviction proceeding included:

1.  Insufficient pretrial communication and contacts with Theriault;

2.  Failure to prepare Theriault to testify and to allow Theriault to make a rational decision to testify in his own defense;

3.  Failure to hire a private investigator to investigate his case and perhaps develop evidence that the victim had a motive to lie and that the victim's brother and stepfather should be considered alternative suspects;

4.  Failure to call unnamed witnesses who allegedly would have testified to inconsistencies in the victim's statements, without indication of who the witnesses were or what they might have testified to;

5.  Failure to retain expert witnesses to (a) discuss the impact of suggestive interview techniques on children, and (b) explain the significance of the lack of physical findings of an assault; [15]

---

[15]  The record does not disclose the basis for the claim that calling an expert witness to testify about the lack of physical findings of an assault might have benefited the defense in an unlawful sexual contact case.  In such cases, testimony about the lack of physical findings indicating an assault usually is offered by and benefits the State.  Theriault's claim on this point may be an example of making every conceivable

6. Failure to request an order to allow review of the victim's alleged DHHS records, but without any indication, by post-conviction counsel, that DHHS records existed, or that, if they did exist, what relevant information they might contain;

7. Failure to challenge the by then nine-year-old victim's competency to testify at trial, but without any indication of any basis that trial counsel or the trial court might have had to question the victim's competence at trial;

8. Failure to call character witnesses to testify to Theriault's good character traits, although such evidence would have opened the door for the State to ask questions about Theriault's prior bad acts, including a Connecticut conviction for child endangerment and a possible sexual assault charge in New Mexico;

9. Failure to call a police officer who had recorded some inconsistent statements from the victim and other family members, although such an inquiry could have opened the door to the officer's testimony about a conversation with Theriault, in which Theriault admitted to unrelated criminal conduct in other states and got into a heated argument with the officer "flip[ping] him off";

10. Failure to cross-examine the victim about her trial testimony that on the day of the incident, she played a PlayStation video game at Theriault's home, after Theriault had informed trial counsel that he did not own a PlayStation; and

---

criticism about things that trial counsel allegedly failed to do in the hope that some claim might find traction.

11.   Failure to cross-examine the victim about the Spurwink interview during which she initially stated that Theriault had not sexually assaulted her and no one had touched her privates, but later stated that someone had touched her privates and that Theriault had sexually assaulted her.

[¶48]   On this last point, Theriault's brief to the post-conviction court, his memorandum to us in support of allowing this appeal, M.R. App. P. 19(c), and his brief to us on appeal, each, using nearly identical language, argued only that trial counsel should have cross-examined the victim about her statements made during the Spurwink interview.   Theriault's only argument regarding the Spurwink interview, in his brief to us, is under a heading "*Cross-examination of* [*the victim*]."   There Theriault argues, after referencing the Spurwink interview, that "[t]rial counsel utterly failed in this most basic role of cross-examining a complainant."   None of Theriault's advocacy suggested, as the Court now determines, that trial counsel may have erred by not affirmatively presenting a witness describing the victim's inconsistent statements in the Spurwink interview.

[¶49]   The trial transcript indicates that at trial, Theriault's counsel questioned the State's witnesses about inconsistencies between the victim's trial testimony and her prior statements to family members and personnel at the local hospital.   Trial counsel's examination of the State's witnesses also raised the issue of whether the witnesses' questioning of the victim may have suggested or

prompted her statements that Theriault had sexually assaulted her. In closing arguments, trial counsel argued that reasonable doubt about guilt was created by the inconsistencies in the victim's trial testimony and her prior statements and by the possible influence the questions she was asked on the evening of the event may have had on her statements.

[¶50]   Trial counsel's reasons for not cross-examining the victim more extensively were demonstrated at the post-conviction hearing. There, trial counsel testified that, while the victim was testifying, he could see members of the jury making a connection with her and that some jurors were crying. Consequently, trial counsel testified, he decided it was most important to limit cross-examination of the victim to get her off the stand as quickly as possible.

[¶51] Trial counsel's choice to limit cross-examination of the victim in light of his concerns about jury sympathy for the victim cannot be characterized as ineffective assistance—a deficiency indicating "serious incompetency, inefficiency, or inattention of counsel amounting to performance . . . below what might be expected from an ordinary fallible attorney," *Aldus v. State*, 2000 ME 47, ¶ 12, 748 A.2d 463.[16]  As a nationally respected text on trial advocacy by a Maine

_____

[16]   The post-conviction court referenced the same standard for determining ineffective assistance, citing *Strickland v. Washington*, 466 U.S. 668 (1984), and *Lang v. Murch*, 438 A.2d 914, 915 (Me. 1981), one of our earlier post-conviction opinions that used nearly identical language.

author notes, sometimes the best cross-examination is no cross-examination at all.[17]

### III. THE *STRICKLAND* TWO-PART TEST

[¶52]    The Court's opinion states: "To prevail in a post-conviction proceeding based on an alleged constitutional deprivation of counsel, the petitioner must demonstrate two points: first, 'that counsel's representation fell below an objective standard of reasonableness,' and second, that 'errors of counsel . . . actually had an adverse effect on the defense.'" (¶ 14, citing and quoting *Strickland*).

[¶53]    Previously, we have described the petitioner's burden on ineffective assistance of counsel claims as a two-part test: "First, we consider 'whether there has been serious incompetency, inefficiency, or inattention of counsel amounting to performance . . . below what might be expected from an ordinary fallible attorney.' Second, we determine 'whether any such ineffective representation likely deprived the defendant of an otherwise available substantial ground of defense.'" *Gauthier v. State*, 2011 ME 75, ¶ 12, 23 A.3d 185 (citations omitted). *See also Strickland*, 466 U.S. at 686, noting that the "prejudice" or "adverse effect" test involves an inquiry into whether "counsel's conduct so undermined the proper

---

[17]   Peter L. Murray, *Basic Trial Advocacy*, 157-158 (1995).

functioning of the adversarial process that the trial cannot be relied on as having produced a just result."

[¶54] Following this general observation, the *Strickland* opinion articulates its widely used two-part test:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* 687.[18]

### IV. REVIEW OF THE POST-CONVICTION DECISION

[¶55] A post-conviction petition must be denied if the petitioner fails to maintain his or her burden to demonstrate entitlement to relief on either element of the two-part test. Here, the post-conviction court, without reaching the competence of counsel issue, decided that its "analysis of the prejudice prong is determinative of this petition." The post-conviction court stated generally, "If a post-conviction petitioner proves ineffective assistance, he must also demonstrate

---

[18] *Strickland* was a death penalty case that included claims of incompetence of counsel in both the trial and the sentencing phase of the case.

that the outcome of the proceedings would have been different but for counsel's performance," a statement with which the Court takes issue.

[¶56]    The post-conviction court then proceeded to address many of Theriault's specific challenges, finding, in each instance, that Theriault had not demonstrated prejudice—the term drawn from *Strickland*—resulting from trial counsel's allegedly inadequate representation of him.  The record indicates that for many of Theriault's challenges, Theriault had offered no evidence whatsoever of how he was prejudiced by the alleged failures to hire a private investigator, investigate to find alternative suspect evidence, retain experts, or call unnamed witnesses to demonstrate additional inconsistencies in the victim's testimony.

[¶57]    On Theriault's challenges (1) through (9), listed above, the Court concludes, and I agree, that: "Theriault failed to demonstrate entitlement to post-conviction relief regardless of how one might characterize the element of prejudice, because the complete absence of any evidence of prejudice would preclude any prospect of proving that the guilty verdict was unreliable and not entitled to confidence."  Court's Opinion ¶ 26.

[¶58] That leaves for decision only issues (10), the failure to inquire further about the victim's statement that she had used a PlayStation video game at Theriault's home, and (11), the failure to cross-examine the victim about the inconsistencies in her statements during the Spurwink interview.    Revising

Theriault's argument, the Court recharacterizes issue (11) from a failure to cross-examine to a failure to present evidence, presumably by calling a witness from Spurwink to testify about the victim's inconsistent statements in the Spurwink interview. The Court then decides on these two points, points that were not the primary points argued to the post-conviction court, that the post-conviction court's improper wording of its decision as to the PlayStation issue is enough to require that the judgment be vacated.

[¶59]  On the PlayStation issue, the record has gaps identical to those the Court identifies in rejecting claims (1) through (9). The record does not indicate how evidence that Theriault did not have a PlayStation video game in his home could have been presented except (1) through further cross-examination of the victim—a tactical choice properly rejected based on the jury's perceived sympathetic reaction to the victim, or (2) by calling Theriault to the stand, contrary to the tactical decision approved by the post-conviction court and affirmed in the Court's opinion. The record is silent as to whether Theriault may have had other video games in his home and whether the nine-year-old victim, recalling playing a video game when she was six, used the term "PlayStation" as a generic reference to any video game, or whether she recognized and recalled the exact model of the game she was playing.

[¶60]  The post-conviction court rejected the PlayStation challenge, noting that at trial evidence was presented that the victim told the nurse that Theriault had touched her over her clothing, which was inconsistent with the victim's trial testimony that she was not wearing clothes at the time of the assault.  The post-conviction court found that because the jury appeared to have accepted the victim's testimony despite her contradictory statements about the incident itself, evidence on a collateral issue, that Theriault did not have a PlayStation or other video game—if that evidence existed—was not "likely to have produced a different result."

[¶61]  The Court characterizes this statement as an erroneous "outcome determinative test" justifying vacating the judgment.  Court's Opinion ¶ 27.  But the Court approves the post-conviction court's rejection of the nine other claims, using similar, allegedly flawed language, where, like the PlayStation claim, there was no evidentiary support for entitlement to relief, regardless of how one characterized the element of prejudice.  The record lacks any indication of how the PlayStation evidence, if it existed, might have been presented, or how the tactical choice not to cross-examine the victim about the presence of some video game "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

[¶62]   The Court's ruling on the absence of Spurwink statement cross-examination, as post-conviction counsel characterized it, or the absence of Spurwink statement evidence, as the Court recharacterizes counsel's argument, is based on an even thinner reed.

[¶63]  As the Court's opinion correctly recognizes: "The [post-conviction] court did not discuss this [Spurwink] evidence in its order, and neither party requested that the court issue findings on the issue." Court's Opinion ¶ 28. Thus, there is no improper use of words in the post-conviction court's finding on this issue, and the lack of a request for findings suggests the limited attention the post-conviction court and Theriault gave to this issue in the post-conviction proceedings.

[¶64]  "In those circumstances", the Court's opinion states, "we ordinarily would infer that a court made factual findings sufficient to support its ultimate conclusion." Court's Opinion ¶ 28. That principle is well established in the jurisprudence of appellate review. *See Pelletier v. Pelletier*, 2012 ME 15, ¶ 20, 36 A.3d 903; *Sutherland v. Morrill*, 2008 ME 6, ¶¶ 4-5, 940 A.2d 192; *Lyons v. Baptist Sch. of Christian Training*, 2002 ME 137, ¶ 13, 804 A.2d 364; *State v. Dodd*, 503 A.2d 1302, 1307 (Me. 1986) (stating that when there has been no request for findings of fact pursuant to M.R. Civ. P. 52(a), or M.R. Crim. P. 23(c) (now M.R.U. Crim. P. 23(c)), we will infer that the trial court found all the facts

necessary to support its judgment, if those inferred findings are supportable by the evidence in the record).

[¶65] In its opinion, the Court abandons this sound principle of appellate review, stating: "In the specific circumstances of this case, however, the legitimacy of that inference is undermined, because it would attribute to the court the use of a legal principle that it misstated several times in its order." Court's Opinion ¶ 28. The Court's "several times" reference must be to portions of the post-conviction order that it affirms or to the post-conviction court's single comment deciding the PlayStation issue.

## V. LEGAL ANALYSIS

[¶66] As the *Strickland* opinion states, the post-conviction review process is not an invitation to revisit and second-guess trial tactics that, in hindsight, have proved unsuccessful. 466 U.S. at 689. Although not completely insulated from review, strategic and tactical decisions of trial attorneys deserve significant deference. *Id*. To demonstrate that an attorney's trial tactics were sufficiently ineffective to justify vacating a conviction, such decisions must be proved to have been "manifestly unreasonable," *Pineo v. State*, 2006 ME 119, ¶ 13, 908 A.2d 632, indicating "serious incompetency, inefficiency, or inattention of counsel amounting to performance . . . below what might be expected from an ordinary fallible attorney." *Aldus*, 2000 ME 47, ¶ 12, 748 A.2d 463.

[¶67]   In appellate review of a post-conviction court's findings, the facts underlying the trial and post-conviction hearing are viewed in the light most favorable to the post-conviction court's judgment.   *Lamarre v. State*, 2013 ME 110, ¶ 2, 82 A.3d 845; *Heon v. State*, 2007 ME 131, ¶ 5, 931 A.2d 1068. Further, "[w]e will not overturn a post-conviction court's determination as to the effectiveness of trial counsel unless it is clearly erroneous and there is no competent evidence in the record to support it.  Likewise, the finding of whether the petitioner was prejudiced by his attorney's error is a factual finding reviewed for clear error."  *Gauthier*, 2011 ME 75, ¶ 13, 23 A.3d 185.

[¶68]   Thus, unless unsupported in the record, and there is no suggestion of that, we must accept the facts as the post-conviction court found them, and construe them most favorably to the post-conviction court's decision.

[¶69]   The Court determines that the post-conviction court erred, and its judgment must be vacated because, for the PlayStation issue, the post-conviction court did not consider, or for the Spurwink issue, the Court infers that it did not consider, whether there was a "reasonable probability" that "the guilty verdict and resulting conviction were unreliable and not worthy of confidence."   Court's Opinion ¶ 25 (citing *Strickland*, 466 U.S. at 693).

[¶70]   Regardless of whether one utilizes the Court's articulation of the *Strickland* standard quoted from page 693 in *Strickland*, or the standard actually

stated in *Strickland*, at 687, quoted above in this opinion at ¶ 54, the Court's opinion disregards the insignificance of the issues the Court relies on to vacate the judgment.

[¶71]  The victim's "PlayStation" reference at trial, and Theriault's allegation that there was no PlayStation in his home, was irrelevant to the victim's credibility—or any other trial issue— because there was no evidence that (1) the victim's reference at trial to what she played with when she was six was product-specific, not generic; or (2) a witness was available to testify at trial that, three years prior to trial, there was no PlayStation or other video game in Theriault's home.

[¶72] Without such evidence, Theriault failed to establish any "reasonable probability" that trial counsel's tactics regarding the PlayStation issue were enough to "undermine the confidence in the outcome" of the trial.  Just as it determined the first nine challenges, the Court should determine, as a matter of law, that on this irrelevant or insignificant issue, Theriault has failed to demonstrate either incompetence of counsel or prejudice entitling him to post-conviction relief.

[¶73]  That leaves only the issue of the inconsistent statements in the Spurwink interview.  If this is a lack of cross-examination of the victim issue, as post-conviction counsel characterized it, then, as discussed above, no ineffectiveness of counsel is demonstrated in the tactical choice not to examine the

victim extensively after observing the jury's reaction to the victim. If no ineffectiveness is demonstrated, the prejudice issue, regardless of how the post-conviction court characterized it, is not reached.

[¶74] If the issue is as the Court characterizes it, whether Theriault was prejudiced by trial counsel's "failure to present any evidence of the prior exculpatory statements made by the victim during the Spurwink evaluation, when she reportedly said that no one—including Theriault—had done anything to her that she did not like, and, more specifically, that Theriault had not sexually assaulted her," Court's Opinion ¶ 28, there are still no grounds to vacate, even if we assume, as the Court apparently does, that this "evidence" issue, though not argued by counsel, was timely asserted and preserved.

[¶75] On this issue, the Court should not create an exception to its well-accepted principle of appellate review that, absent a request for findings, it will infer that a trial court properly made factual findings sufficient to support its ultimate conclusion on an issue before it. Even if the Court is ready to infer error when it should not, there still can be no "reasonable probability" that the tactical choice not to call the Spurwink witness was enough to "undermine the confidence in the outcome" of the trial.

[¶76] The Spurwink evidence would have to have been presented through a live witness who had treated the victim, not a copy of a report, as was offered in

the post-conviction hearing. The post-conviction court would have known there was good reason for the defense to avoid the Spurwink witness in this case. Contrary to the statement in the Court's Opinion ¶ 28, the Spurwink witness's testimony would not have been limited to "the prior exculpatory statements made by the victim during the Spurwink evaluation." After presenting those "exculpatory" statements, the witness, in response to cross-examination by the State, would certainly have testified to the statements by the victim that she had been sexually assaulted by Theriault.

[¶77]   In the artificial world of post-conviction Monday morning quarterbacking, it is certainly not out of bounds to allege that, as a tactic to attack the victim's credibility, the Spurwink witness should have been called by the defense at trial. But in the real world of a criminal trial, defense counsel's calling this Spurwink witness may itself have demonstrated incompetence of counsel. To quote the *Strickland* standard itself, certainly the choice not to call this likely adverse witness was not an error "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." 466 U.S. at 687. The record demonstrates neither incompetence of counsel, nor prejudice to undermine the confidence in the outcome of the trial in the tactical choice not to call the Spurwink witness. This issue, even if characterized as failure to present evidence, rather than failure to cross-examine the victim, does not justify vacating the judgment.

## VI. CONCLUSION

[¶78]  Throughout its opinion addressing Theriault's many complaints about trial counsel's tactical choices, the post-conviction court may not, in each instance, have perfectly phrased its findings and conclusions.  But in its opinion, and in its result, the post-conviction court committed no error.  And it certainly committed no error in addressing the two collateral issues of trial tactics that the Court seizes upon to vacate the judgment.  Neither of these issues is sufficient to undermine confidence in the outcome of the trial.  I would affirm the post-conviction court's judgment in its entirety.

---

**On the briefs and at oral argument:**

Richard L. Hartley, Esq., Law Office of Richard L. Hartley, P.C., Bangor, for appellant Mark J. Theriault

Todd R. Collins, District Attorney, 8th Prosecutorial District, Caribou, for appellee State of Maine

Aroostook County Superior Court (Caribou) docket number CR-2012-437
FOR CLERK REFERENCE ONLY